**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

REPRODUCTIVE HEALTH SERVICES OF PLANNED
PARENTHOOD OF THE ST. LOUIS REGION, INC., on
behalf of itself, its physicians, its staff, and its patients, and
COLLEEN P. MCNICHOLAS, D.O., M.S.C.I.,
F.A.C.O.G., on behalf of herself and her patients,

                        Plaintiffs,


                 v.


MICHAEL L. PARSON, in his official capacity as
Governor of the State of Missouri; ERIC S. SCHMITT, in
his official capacity as Attorney General of the State of
Missouri; KIMBERLY M. GARDNER, in her official
capacity as the Circuit Attorney for the City of St. Louis;
JADE D. JAMES, M.D., in her official capacity as
President of the Missouri State Board of Registration for
the Healing Arts; SARAH MARTIN, PH.D., M.P.P.,
M.P.H., in her official capacity as Secretary of the
Missouri State Board of Registration for the Healing Arts;
SAMMY L. ALEXANDER, M.D., JAMES A. DIRENNA,
D.O., JEFFREY S. GLASER, M.D., F.A.C.S.,
KATHERINE J. MATHEWS, M.D., NAVEED
RAZZAQUE, M.D., DAVID E. TANNEHILL, D.O., and
MARC K. TAORMINA, M.D., F.A.C.P., in their official
capacities as Members of the Missouri State Board of
Registration for the Healing Arts; and RANDALL
WILLIAMS, M.D., in his official capacity as Director of
the Department of Health & Senior Services of the State of
Missouri,

                        Defendants.

CIVIL ACTION

CASE NO. ___2:19-cv-4155___

**SUGGESTIONS IN SUPPORT
OF PLAINTIFFS' MOTION
FOR A PRELIMINARY
INJUNCTION AND
EXPEDITED BRIEFING
SCHEDULE, OR, IN THE
ALTERNATIVE, A
TEMPORARY
RESTRAINING ORDER**

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 3

    I.     ABORTION IN MISSOURI ................................................................................. 3

    II.    THE BANS AND THEIR IMPACT ...................................................................... 5

ARGUMENT ......................................................................................................................... 8

    I.     APPLICABLE LEGAL STANDARDS ................................................................ 8

    II.    PLAINTIFFS WILL SUCCEED ON THE MERITS BECAUSE THE
           BANS UNCONSTITUTIONALLY PROHIBIT PRE-VIABILITY
           ABORTION CARE ................................................................................................ 9

    III.   ABSENT AN INJUNCTION, PLAINTIFFS AND PATIENTS IN
           MISSOURI WILL SUFFER IRREPARABLE HARM ...................................... 11

    IV.   THE BALANCE OF HARMS DECIDEDLY FAVORS INJUNCTIVE
           RELIEF ................................................................................................................ 14

    V.    THE PUBLIC INTEREST WEIGHS HEAVILY IN FAVOR OF
           INJUNCTIVE RELIEF ....................................................................................... 14

BOND IN THIS CASE ......................................................................................................... 15

CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bellotti* v. *Baird*,
    443 U.S. 622 (1979).................................................................................................12

*Bryant* v. *Woodall*,
    363 F. Supp. 3d 611 (M.D.N.C. 2019) ..................................................................10

*Chamber of Commerce of U.S.* v. *Edmondson*,
    594 F.3d 742 (10th Cir. 2010) ...............................................................................14

*Colautti* v. *Franklin*,
    439 U.S. 379 (1979)..................................................................................................2

*Dataphase Sys., Inc.* v. *C L Sys., Inc.*,
    640 F.2d 109 (8th Cir. 1981) (en banc) ...................................................................8

*Doctor John's, Inc.* v. *City of Sioux City*,
    305 F. Supp. 2d 1022 (N.D. Iowa 2004).................................................................14

*Edwards* v. *Beck*,
    786 F.3d 1113 (8th Cir. 2015) .................................................................................9

*EMW Women's Surgical Ctr., P.S.C.* v. *Beshear*,
    No. 3:19-CV-178-DJH, 2019 WL 1233575 (W.D. Ky. Mar. 15, 2019)............10, 14

*Guam Soc'y of Obstetricians & Gynecologists* v. *Ada*,
    962 F.2d 1366 (9th Cir. 1992) ...............................................................................10

*Hill* v. *Xyquad, Inc.*,
    939 F.2d 627 (8th Cir. 1991) .................................................................................15

*Isaacson* v. *Horne*,
    716 F.3d (9th Cir. 2013) ...........................................................................................9

*Jackson* v. *NFL*,
    802 F. Supp. 226 (D. Minn. 1992)...........................................................................9

*Jackson Women's Health Org.* v. *Currier*,
    349 F. Supp. 3d 536 (S.D. Miss. 2018)..................................................................10

*Jackson Women's Health Org.* v. *Dobbs*,
    379 F. Supp. 3d 549 (S.D. Miss. May 24, 2019) ..............................................10, 14

*Jane L.* v. *Bangerter*,
    102 F.3d 1112 (10th Cir. 1996) ...............................................................................9

*Kan. City S. Transp. Co.* v. *Teamsters Local Union No. 41*,
    126 F.3d 1059 (8th Cir. 1997) ......................................................................8

*Little Rock Family Planning Servs.* v. *Rutledge*,
    No. 4:19-CV-00449-KGB, 2019 WL 3323731 (E.D. Ark. July 23, 2019) ......................10, 11

*MB.* v. *Corsi*,
    2018 WL 5504178 (W.D. Mo. Oct. 29, 2018) ...........................................................12

*MKB Mgmt. Corp.* v. *Stenehjem*,
    795 F.3d 768 (8th Cir. 2015) ......................................................................9

*Planned Parenthood of Ind. & Ky., Inc.* v. *Comm'r of Ind. State Dep't of Health*,
    265 F. Supp. 3d 859 (S.D. Ind. 2017) ..............................................................11

*Planned Parenthood of Ind. & Ky., Inc.* v. *Comm'r of Ind. State Dep't of Health*,
    888 F.3d 300 (7th Cir. 2018) ......................................................................10

*Planned Parenthood of Minn., Inc.* v. *Citizens for Cmty. Action*,
    558 F.2d 861 (8th Cir. 1977) ......................................................................11

*Planned Parenthood Minn., N. Dakota, S. Dakota* v. *Daugaard*,
    799 F. Supp. 2d 1048 (D.S.D. 2011) ...............................................................14

*Planned Parenthood Se., Inc.* v. *Strange*,
    33 F. Supp. 3d 1330 (M.D. Ala. 2014) .............................................................12

*Planned Parenthood of Se. Pa.* v. *Casey*,
    505 U.S. 833 (1992) ......................................................................1, 9, 12, 13

*Preterm Cleveland* v. *Hines*,
    294 F. Supp. 3d 746 (S.D. Ohio 2018) .............................................................11

*Roe* v. *Crawford*,
    396 F. Supp. 2d 1041 (W.D. Mo. 2005) .............................................................12

*Roe* v. *Wade*,
    410 U.S. 113 (1973) ......................................................................9, 12

*Sojourner T.* v. *Edwards*,
    974 F.2d 27 (5th Cir. 1992) ......................................................................10

*Traditionalist Am. Knights of the Ku Klux Klan* v. *City of Desloge, Mo.*,
    914 F. Supp. 2d 1041 (E.D. Mo. 2012) .............................................................14

*W. Ala. Women's Ctr.* v. *Miller*,
    299 F. Supp. 3d 1244 (M.D. Ala. 2017) ............................................................12

*Whole Woman's Health* v. *Hellerstedt*,
  136 S. Ct. 2292 (2016), *as revised* (June 27, 2016)........................................................9

STATUTES

Mo. Rev. Stat. § 188.015 .................................................................................................5

Mo. Rev. Stat. § 188.015 .................................................................................................2

Mo. Rev. Stat. § 188.030 ..............................................................................................2, 9

Mo. Rev. Stat. § 188.039 .................................................................................................7

Mo. Rev. Stat. § 188.056 .................................................................................................5

Mo. Rev. Stat. § 188.057 .................................................................................................5

Mo Rev. Stat. § 188.058 ..................................................................................................5

Mo Rev. Stat. § 188.375 ..................................................................................................5

Mo. Rev. Stat. § 197.230 .................................................................................................6

Mo. Rev. Stat. § 376.805 .................................................................................................7

OTHER AUTHORITIES

Fed. R. Civ. P. 65.........................................................................................................15

Mo. Code Regs. Ann. tit. 19, § 30-30.060 ......................................................................6

Absent intervention from this Court, on August 28, 2019, the State of Missouri will ban the vast majority of pre-viability abortions in the State, in clear violation of patients' rights under decades of unbroken Supreme Court precedent. These bans will cause grave and irreparable harm to patients' physical and emotional well-being. Plaintiffs seek this Court's immediate intervention to enjoin Defendants from enforcing these pre-viability abortion bans.

In recent years, Missouri has waged a relentless campaign to limit the availability of pre-viability abortion in the State. Now, in its most extreme and clearly unconstitutional attack yet, Missouri passed House Bill No. 126 ("H.B. 126" or "the Bans"), which makes it a felony for Plaintiffs, all of whom are abortion providers, to provide the vast majority of pre-viability abortions their patients seek. That law includes four separate gestational age bans (the "Gestational Age Bans") prohibiting abortions at or after 8, 14, 18, and 20 weeks after the first day of a patient's last menstrual period ("LMP"), all pre-viability points in pregnancy, with only a single, narrow exception for medical emergencies. H.B. 126 also prohibits pre-viability abortion at any stage of pregnancy where the physician "knows" a patient is seeking an abortion "solely because of" a "prenatal diagnosis, test, or screening" indicating Down syndrome or the potential for it, or on the basis of the sex or race of the embryo or fetus (the "Reason Ban").

The Bans are blatantly unconstitutional under decades of binding Supreme Court precedent. For more than four decades, the Supreme Court has held that "a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability." *Planned Parenthood of Se. Pa.* v. *Casey*, 505 U.S. 833, 879 (1992); *see id.* at 871 ("The woman's right to terminate her pregnancy before viability is the most central principle of *Roe* v. *Wade*. It is a rule of law and a component of liberty we cannot renounce."). Because the decision to bear a child is one of the "most intimate and personal choices a person may make in a

lifetime, choices central to personal dignity and autonomy, [and] central to the liberty protected by the Fourteenth Amendment," the Supreme Court has clearly held that, before viability, a State cannot "insist [a patient] make the sacrifice" to undergo the "anxieties, [the] physical constraints, [and] pain that only she must bear" in pregnancy and childbirth. *Id.* at 851–52 ; *id.* at 860 (holding viability "marks the earliest point" at which a state may prohibit abortion).

Prior to the enactment of H.B. 126, Missouri already regulated the timing of abortion to the extent permitted under binding Supreme Court precedent. Specifically, section 188.030(1)— a provision Plaintiffs do not challenge and which remains in effect in parallel to the new Bans— prohibits "abortion of a viable" fetus except in the case of a medical emergency. In that statute, viability is defined, consistent with binding Supreme Court precedent, as "that stage of fetal development when the life of the [fetus] may be continued indefinitely outside the womb by natural or artificial life-supportive systems," without reference to a specific week in pregnancy. Mo. Rev. Stat. § 188.015(10) (effective Aug. 28, 2011). *See, e.g.*, *Colautti* v. *Franklin*, 439 U.S. 379, 388 (1979) ("Viability is reached when, in the judgment of the attending physician on the particular facts of the case before him, there is a reasonable likelihood of the fetus' sustained survival outside the womb, with or without artificial support.").

In H.B. 126, however, Missouri brazenly defies these clear constitutional limits and bans pre-viability abortions at various gestational ages (all well before viability) or based on the patient's reasons for seeking the abortion. The Bans plainly violate Plaintiffs' patients' long-settled constitutional rights, and thus Plaintiffs have a high likelihood of success on the merits of their challenge to the constitutionality of H.B. 126.

If H.B. 126 takes effect, Plaintiffs will be forced to turn away the vast majority of their patients seeking pre-viability abortions. These patients will not only suffer the denial of their

constitutional rights (itself an irreparable harm) but also serious and irreparable harm to their physical and emotional well-being.  Defendants, by contrast, will not be harmed by maintaining the status quo, under which Plaintiffs continue to provide safe and effective pre-viability abortion care to their patients, as they have done for decades.  The irreparable harms to Plaintiffs' patients and the public interest weigh decisively in Plaintiffs' favor with respect to injunctive relief.

Plaintiffs respectfully request that this Court enter an expedited briefing schedule to ensure sufficient time for the Court to act before H.B. 126 goes into effect or, in the alternative, that the Court issue a temporary restraining order.

## STATEMENT OF FACTS

### I.  ABORTION IN MISSOURI

Plaintiff Reproductive Health Services of Planned Parenthood of the St. Louis Region ("RHS") is a not-for-profit corporation organized under the laws of Missouri and provides high-quality reproductive health care in St. Louis, Missouri.  RHS currently offers pre-viability surgical abortion through 21 weeks and 6 days ("21.6") LMP.  Plaintiff Colleen P. McNicholas, D.O., M.S.C.I., F.A.C.O.G., a board-certified obstetrician-gynecologist ("OB/GYN") licensed to practice medicine in Missouri and four other states, is the Chief Medical Officer for Planned Parenthood of the St. Louis Region and Southwest Missouri ("PPSLR").  In that capacity, Dr. McNicholas oversees all medical care provided through PPSLR's eight health centers and its affiliated clinic RHS.  She also provides abortion care in the hospital setting.

Plaintiffs' patients seek abortions for a wide range of complicated and personal reasons that are closely tied to each person's values, culture and religion, health and reproductive history, family situation and support system, educational or career goals, and resources and financial stability.  Declaration of Colleen P. McNicholas, D.O., M.S.C.I., F.A.C.O.G. ("McNicholas Decl.") (Exhibit 1) ¶ 28.  Some of Plaintiffs' patients have abortions because they conclude it is

not the right time to become a parent given their age, desire to pursue their education or career, or their lack of necessary financial resources or level of partner or familial support or stability. *Id.* at ¶ 30. The majority of Plaintiffs' patients are already parents and may already be struggling to adequately provide for their existing children—both materially and emotionally. Many of these patients have decided they cannot add another child to their family at that time. *Id.* at ¶ 29.[1] Others seek abortions because continuing with the pregnancy could pose a risk to their health. *Id.* at ¶ 30. Other patients seek abortions because of a fetal medical condition, where they do not feel they have the necessary financial, medical, educational, or emotional resources to care for a child with special needs or to do so while providing for the children they already have. *Id.* at ¶ 31. And still other patients are in abusive relationships and are concerned that carrying to term will tether them to their abusers. *Id.* at ¶ 30.

H.B. 126 is the latest—and most extreme—of Missouri's attacks on abortion access. Missouri's repeated attacks and medically irrelevant requirements have already forced two safe and high-quality health centers to stop providing abortion care and have prevented others from starting to offer abortion services. The entire State of Missouri is now left with only one generally available abortion care provider, RHS, located on the easternmost edge of the State, and providing only one of the two main types of abortion (that is, surgical, but not medication, abortion).[2] As a result, Missouri is now one of the most difficult states in the country in which to access abortion care.[3]

---

[1]   In 2018, over 63% of RHS's abortion patients already had at least one child. McNicholas Decl. ¶ 29.

[2]   Missouri recently instituted a requirement that patients seeking medication abortions must undergo invasive pelvic exams even where medically inappropriate; as a result, RHS now only offers medication abortion in those very rare instances where a pelvic exam is actually clinically appropriate for a particular patient in light of her specific presentation. McNicholas Decl. ¶ 10.

[3]   Indeed, earlier this year, Department of Health & Senior Services of the State of Missouri ("DHSS") refused to grant RHS's routine license renewal on grounds which RHS has challenged as illegitimate and pretextual. If not for an emergency stay granted by the state court, Missouri would have become the first State in the nation to

## II.    THE BANS AND THEIR IMPACT

In this action, Plaintiffs challenge five recently enacted abortion bans in H.B. 126 which, on their face, directly violate a patient's constitutional rights under the due process clause of the Fourteenth Amendment.  All five bans are set to take effect on August 28, 2019.

The four Gestational Age Bans make it a felony to perform an abortion at or after 8, 14, 18, and 20 weeks LMP,[4] even though no fetus is viable at any of these points in pregnancy. McNicholas Decl. ¶ 25.  The only exception to the Gestational Age Bans is for a "medical emergency," which is narrowly defined as a condition that necessitates an "immediate" abortion "to avert the death of the pregnant woman" or a "serious risk of substantial and irreversible physical impairment of a major bodily function of the pregnant woman."  Mo. Rev. Stat. § 188.015(7); *see also id.* §§ 188.056(1), 188.057(1), 188.058(1), 188.375(3).  Physicians acting in violation of any of the Gestational Age Bans would face Class B felony charges and the loss of their medical licenses.  *See id.* §§ 188.056(1), 188.057(1), 188.058(1), § 188.375(3).  Under the terms of the statute, each of the Gestational Age Bans is purportedly "severable" such that, in the event any of them is found unconstitutional or invalid, the other Gestational Age Bans are intended to remain in effect.  *See id.* §§ 188.056(4), 188.057(4), 188.058(4), 188.375(9).

The fifth ban in H.B. 126, the Reason Ban, prohibits the provision of pre-viability abortion at any stage in the pregnancy if the provider "knows that the woman is seeking the abortion solely because of a prenatal diagnosis, test, or screening indicating Down Syndrome or the potential for Down Syndrome" or "solely because of the sex or race" of the embryo or fetus.

---

be without an abortion provider since 1974.  The question of RHS's license renewal remains pending in an administrative challenge before the Administrative Hearing Commission.  Based on the Commission's finding that RHS is likely to succeed on the merits of its challenge to the license renewal decision, the Commission has issued a lengthy stay and RHS continues to provide safe and effective pre-viability abortion care to its patients.

[4]    Mo. Rev. Stat. § 188.056 (the "8-Week Ban"); § 188.057 (the "14-Week Ban"); § 188.058 (the "18-Week Ban"); § 188.375 (the "20-Week Ban").

*Id.* § 188.038(2)–(3).  The abortion provider is also required to provide "a certification that the physician does not have any knowledge" that the patient "sought the abortion solely because of" any of the proscribed reasons.  *Id.* § 188.052(1).  The Reason Ban carries civil penalties, including the loss of the physician's medical license.  *See id.* § 188.038(4).[5]

Unless this Court grants Plaintiffs the relief they seek, the Bans will require Plaintiffs to turn away the vast majority of their patients seeking to exercise their right to pre-viability abortion care.  Indeed over 71% of Plaintiff RHS's patients in 2016 through 2018 obtained abortions at or after 8 weeks LMP.  McNicholas Decl. ¶ 52.  While patients generally try to get an abortion as early in their pregnancy as possible, in practice, numerous barriers can cause delay.  McNicholas Decl. ¶ 36.

Patients with irregular periods—an extremely common occurrence for a variety of reasons, including certain common medical conditions, contraceptive use, age, or breastfeeding—or those who experience bleeding during early pregnancy (which can be mistaken for a period) may not even discover they are pregnant before the cutoffs imposed by the Gestational Age Bans, in which case they may be denied the opportunity to obtain abortion care altogether.  *Id.* ¶¶ 37, 39.

Of those patients who discover they are pregnant and decide to seek an abortion before the relevant Gestational Age Ban, many face daunting economic and logistical challenges to obtaining abortion care before each cutoff.  *Id.* ¶ 41.  The overwhelming majority of Plaintiffs' patients are poor or have low incomes.  *Id.* ¶ 44.  Indeed, in 2018 approximately 57% of Plaintiffs' patients were living at or below the poverty line.  *Id.*  These patients often need time to

---

[5]    Moreover, DHSS may attempt to revoke or not renew RHS's license on the basis of a violation of any of the Bans.  Mo. Rev. Stat. § 197.230; *id.* § 197.220; Mo. Code Regs. Ann. tit. 19, § 30-30.060.

figure out how to pay for the abortion, as well as the cost of traveling to obtain abortion care; arranging for transportation to the one remaining clinic in the State (which may be hundreds of miles away); arranging for time off of work; and possibly arranging for childcare during appointments. *Id.* ¶ 45.

All of these burdens are substantially increased by current Missouri state law. Missouri law mandates that patients make two in-person trips to the clinic at least 72 hours apart, regardless of how far away they live, in order to obtain state-mandated information from the same doctor who will provide the abortion. *See* Mo. Rev. Stat. § 188.039. Some patients cannot take multiple days off work in close proximity to each other without jeopardizing their jobs, and some cannot obtain childcare for days in close proximity without revealing to family or other caregivers the reason for their need, thus compromising the confidentiality of their decision to obtain an abortion. McNicholas Decl. ¶ 42. These individual circumstances can lead to further delays. *Id.*. Missouri law also prohibits public insurance (including Medicaid), insurance purchased on the state health exchange, and most private insurance issued in Missouri from covering abortion care services except in extremely limited circumstances. Mo. Rev. Stat. § 376.805. Additionally, minor patients, unless emancipated, must obtain written consent from a parent or a court order from a judge before they can receive care. *See id.* § 188.250.

Patients also seek abortion care later in pregnancy because serious maternal health issues—many of which might not qualify as a "medical emergency" as narrowly defined by statute, but nevertheless jeopardize a patient's health—may not arise until later in pregnancy, including after 18 or 20 weeks LMP. McNicholas Decl. ¶¶ 48, 50. Similarly, definitive testing for fetal diagnoses is typically not available until after 18 to 20 weeks LMP. Declaration of Michael W. Bebbington, M.D., M.H.Sc. (Exhibit 2) ¶ 24.

Consistent with best medical practices, Plaintiffs do not require that patients disclose any, much less all, of their reasons for seeking an abortion. McNicholas Decl. ¶¶ 27, 56. Plaintiffs, however, are aware that some of their patients seek abortions based solely or in part on fetal diagnoses, including Down syndrome. *Id.* ¶ 57. Patients who have learned of a fetal diagnosis, including of Down syndrome, are facing a complex decision that they should be able to make based on their own values, resources and capabilities and through a process of self-reflection and discussion with anyone they choose to involve in the process. *Id.*[6]

If the Bans go into effect and Plaintiffs are required to turn away the vast majority of their patients, Plaintiffs' patients will suffer severe and immediate constitutional, medical, emotional, psychological and other irreparable harm. Accordingly, to protect themselves and their patients from these constitutional violations and to avoid irreparable harm, Plaintiffs seek emergency injunctive relief to prevent enforcement of the Bans.

## ARGUMENT

### I. APPLICABLE LEGAL STANDARDS

"The primary function of a preliminary injunction is to preserve the status quo until, upon final hearing, a court may grant full, effective relief." *Kan. City S. Transp. Co.* v. *Teamsters Local Union No. 41*, 126 F.3d 1059, 1066 (8th Cir. 1997). In deciding a motion for preliminary injunction, the court considers: (1) the probability that the movant will succeed on the merits; (2) the threat of irreparable harm; (3) the balance between this harm and the injury that will be inflicted on other parties by granting the injunction; and (4) the public interest. *Dataphase Sys., Inc.* v. *C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). The standard

---

[6]  Although Plaintiffs are unaware of any patient that has sought an abortion based solely on the sex or race of the embryo or fetus, patients at times ask the sex of the embryo or fetus when the ultrasound is performed and it is possible that the sex or race of the embryo or fetus might be mentioned in non-directive counseling. McNicholas Decl. ¶¶ 59, 60.

for a temporary restraining order is the same. *See, e.g.*, *Jackson* v. *NFL*, 802 F. Supp. 226, 229 (D. Minn. 1992).

## II.     PLAINTIFFS WILL SUCCEED ON THE MERITS BECAUSE THE BANS UNCONSTITUTIONALLY PROHIBIT PRE-VIABILITY ABORTION CARE

Since 1973, the Supreme Court has repeatedly and consistently held that States may not enact **any** pre-viability ban on abortion. *See Roe* v. *Wade*, 410 U.S. 113, 163 (1973); *see also Planned Parenthood of Se. Pa.* v. *Casey*, 505 U.S. 833, 871 (1992) ("The woman's right to terminate her pregnancy before viability is the most central principle of *Roe* v. *Wade*. It is a rule of law and a component of liberty we cannot renounce."); *Whole Woman's Health* v. *Hellerstedt*, 136 S. Ct. 2292, 2320 (2016), *as revised* (June 27, 2016) (restating viability standard and citing *Casey* with approval). This is because "[b]efore viability, the State's interests are not strong enough to support a prohibition of abortion." *Casey*, 505 U.S. at 846.

Missouri law already separately prohibits post-viability abortions, *see* Mo. Rev. Stat. § 188.030(1), and Plaintiffs have not challenged that prohibition. Thus, the only practical effect of the Bans challenged here is to bar pre-viability abortions and they are thus *per se* unconstitutional under decades of clear and unbroken Supreme Court precedent.

Unsurprisingly, similar attempts to ban abortion at various gestational ages prior to viability have been uniformly rejected by the courts of appeals and the district courts across the nation. *See, e.g.*, *MKB Mgmt. Corp.* v. *Stenehjem*, 795 F.3d 768, 776 (8th Cir. 2015) (striking down 6-week ban), *cert. denied*, 136 S. Ct. 981 (2016); *Edwards* v. *Beck*, 786 F.3d 1113, 1117–19 (8th Cir. 2015) (striking down 12-week ban), *cert. denied*, 136 S. Ct. 895 (2016); *Isaacson* v. *Horne*, 716 F.3d at 1217, 1231 (9th Cir. 2013) (striking down 20-week ban), *cert. denied*, 134 S. Ct. 905 (2014); *Jane L.* v. *Bangerter*, 102 F.3d 1112, 1114, 1117–18 (10th Cir. 1996) (striking down 22-week (equivalent) ban), *cert. denied sub nom Leavitt* v. *Jane L.*, 520 U.S. 1274 (1997);

*Sojourner T.* v. *Edwards*, 974 F.2d 27, 31 (5th Cir. 1992) (striking down ban on abortions at all gestational points in pregnancy), *cert. denied*, 507 U.S. 972 (1993); *Guam Soc'y of Obstetricians & Gynecologists* v. *Ada*, 962 F.2d 1366, 1368–69 (9th Cir. 1992) (same), *cert. denied*, 506 U.S. 1011 (1992); *Jackson Women's Health Org.* v. *Currier*, 349 F. Supp. 3d 536, 540 (S.D. Miss. 2018) (striking down 15-week ban), *appeal docketed sub nom. Jackson Women's Health Org.* v. *Dobbs*, No. 18-60868 (5th Cir. Dec. 17, 2018); *Bryant* v. *Woodall*, 363 F. Supp. 3d 611, 630-32 (M.D.N.C. 2019) (striking down 20-week ban), *appeal docketed*, No. 19-1685 (4th Cir. June 26, 2019); *Jackson Women's Health Org.* v. *Dobbs*, 379 F. Supp. 3d 549, 552–53 (S.D. Miss. May 24, 2019) (preliminarily enjoining 6-week ban), *appeal docketed*, No. 19-60455 (5th Cir. June 24, 2019); *EMW Women's Surgical Ctr., P.S.C.* v. *Beshear*, No. 3:19-CV-178-DJH, 2019 WL 1233575, at *1–2 (W.D. Ky. Mar. 15, 2019) (temporarily enjoining 6-week ban); *Little Rock Family Planning Servs.* v. *Rutledge*, No. 4:19-CV-00449-KGB, 2019 WL 3323731, *41–43 (E.D. Ark. July 23, 2019) (granting temporary restraining order against 8-week ban).

Similarly, attempts to ban pre-viability abortion based on the patient's reasons for seeking an abortion have been uniformly rejected. The central principle underlying the privacy right and liberty interests recognized in *Roe*, *Casey*, and *Whole Woman's Health* is that it is for the individual, not the State, to decide whether to terminate a pre-viability pregnancy. "Nothing in the Fourteenth Amendment or Supreme Court precedent allows the State to invade this privacy realm to examine the underlying basis for a woman's decision to terminate her pregnancy prior to viability." *Planned Parenthood of Ind. & Ky., Inc.* v. *Comm'r of Ind. State Dep't of Health*, 888 F.3d 300, 307 (7th Cir. 2018) (permanently enjoining Indiana law prohibiting abortions based solely on diagnosis or potential diagnosis of Down syndrome or other enumerated disability, or sex, race, color, national origin, or ancestry of the embryo/fetus),

*cert. denied in part and granted in part on other grounds sub nom. Box* v. *Planned Parenthood of Ind. & Ky., Inc.*, 139 S. Ct. 1780 (2019).  "The interest protected by the Due Process Clause is a woman's right to choose to terminate her pregnancy pre-viability, and that right is categorical.  The State cannot dictate what factors a woman is permitted to consider in making her choice."  *Preterm Cleveland* v. *Hines*, 294 F. Supp. 3d 746, 755 (S.D. Ohio 2018), *appeal docketed*, No. 18-3329 (6th Cir. Apr. 12, 2018)[7]; *see also Little Rock Family Planning Servs.* v. *Rutledge*, No. 4:19-CV-00449-KGB, 2019 WL 3323731, *46 (E.D. Ark. July 23, 2019) (granting preliminary injunction against Arkansas reason ban because the ban "clearly violates well-established Eighth Circuit and Supreme Court precedent holding that a woman may terminate her pregnancy prior to viability, and that the State may not prohibit a woman from exercising that right solely upon the basis on which a woman makes her decision").

The binding precedents of the Supreme Court, as well as the uniform action of lower courts striking down pre-viability abortion bans, demonstrate that Plaintiffs will succeed on the merits of their claims challenging the constitutionality of the Bans.

## III.  ABSENT AN INJUNCTION, PLAINTIFFS AND PATIENTS IN MISSOURI WILL SUFFER IRREPARABLE HARM

In the absence of a preliminary injunction, Plaintiffs and their patients will suffer irreparable harm.  First, the Bans directly violate Plaintiffs' patients' constitutional right to abortion, which constitutes *per se* irreparable harm.  *See Planned Parenthood of Minn., Inc.* v. *Citizens for Cmty. Action*, 558 F.2d 861, 867 (8th Cir. 1977) (explaining that interference "with the exercise of [Planned Parenthood's] constitutional rights and the rights of its patients supports

---

[7]    *See also Planned Parenthood of Ind. & Ky., Inc.* v. *Comm'r of Ind. State Dep't of Health*, 265 F. Supp. 3d 859, 867 (S.D. Ind. 2017) ("[I]t is a woman's right to choose an abortion that is protected, which, of course, leaves no room for the State to examine, let alone prohibit, the basis or bases upon which a woman makes her choice."), *aff'd*, 888 F.3d 300 (7th Cir. 2018), *and cert. granted in part, judgment rev'd in part on other grounds Box* v. *Planned Parenthood of Ind. & Ky., Inc.*, 139 S. Ct. 1780 (2019).

a finding of irreparable injury"); *MB.* v. *Corsi*, 2018 WL 5504178, at *5 (W.D. Mo. Oct. 29, 2018) ("A threat to a constitutional right is generally presumed to constitute irreparable harm"). This presumption of irreparable harm applies with special force in the context of the fundamental right to abortion, because it is a decision that "simply cannot be postponed, or it will be made by default with far-reaching consequences." *Bellotti* v. *Baird*, 443 U.S. 622, 643 (1979).

The Bans will also inflict serious physical, emotional, and psychological harm on Plaintiffs' patients. Some of Plaintiffs' patients will be prevented from obtaining abortions entirely and forced to carry their pregnancies to term against their will, potentially even in the face of significant health risks that may not fit within the narrow definition of "medical emergency."[8] McNicholas Decl. ¶¶ 50, 54. Others will attempt to seek abortions outside the medical system (with all the risks that may entail),[9] *id.* ¶ 54, and some will have to attempt to obtain care in other states (and incur all the associated economic and logistical burdens, as well as the health risks attendant to delay in accessing abortion care).[10] *Id.*

Notably, for those patients forced to carry their pregnancies to term against their will, the Bans will expose them to significantly greater health risks. Legal abortion is one of the safest procedures in the United States and significantly safer than carrying a pregnancy to term.

---

[8] As the Supreme Court noted in *Roe*, being forced to carry a pregnancy to term against a patient's will can impose a whole litany of irreparable harms including "[s]pecific and direct harm medically," imminent "[p]sychological harm," "the problem of bringing a child into a family already unable, psychologically and otherwise, to care for it," and "a distressful life and future." *Roe*, 410 U.S. at 153; *see also Casey*, 505 U.S. at 852 (recognizing that "[t]he mother who carries a child to full term is subject to anxieties, to physical constraints, to pain that only she must bear").

[9] *See Planned Parenthood Se., Inc.* v. *Strange*, 33 F. Supp. 3d 1330, 1363 (M.D. Ala. 2014) (recognizing that many "women who desperately seek to exercise their ability to decide whether to have a child would take unsafe measures to end their pregnancies"); *W. Ala. Women's Ctr.* v. *Miller*, 299 F. Supp. 3d 1244, 1264, 1280–81 (M.D. Ala. 2017) ("[I]t is likely that some women will pursue risky alternatives."), *aff'd sub nom. W. Ala. Women's Ctr.* v. *Williamson*, 900 F.3d 1310 (11th Cir. 2018), *cert. denied sub nom. Harris* v. *W. Ala. Women's Ctr.*, 139 S. Ct. 2606 (2019).

[10] *Roe* v. *Crawford*, 396 F. Supp. 2d 1041, 1044 (W.D. Mo. 2005) (finding irreparable injury where delay increases "medical, financial, and psychological risks"), *stay of preliminary injunction denied*, 546 U.S. 959 (2005).

McNicholas Decl. ¶ 21.  Thus, in depriving patients of their constitutional right to pre-viability abortion, the Bans would subject these patients to an increased risk of death.  That risk may be particularly acute for patients of color.  *See* McNicholas Decl. ¶ 22 (noting that Missouri's maternal mortality rates are 50% higher than the national average, and, for Black women, more than 300% higher).

As the Supreme Court has acknowledged, abortion access is critical to promoting equality.  "The ability of women to participate equally in the economic and social life of the Nation has been facilitated by their ability to control their reproductive lives."  *Casey*, 505 U.S. at 856.  These concerns are heightened in Missouri where the individuals most likely to be affected by the Ban belong to racial and ethnic minorities and are poor or low income. McNicholas Decl. ¶ 44.  These patients already face barriers to equality and allowing the Bans to take effect may have far-reaching consequences for achieving equality for these already disadvantaged populations.

In addition to the inarguable irreparable harm Plaintiffs' patients will face, Plaintiffs, too, will suffer irreparable harm if they cannot provide compassionate and nonjudgmental health care, based on their medical judgment and the best interests of their patients, without facing criminal and civil penalties and loss of their medical license and RHS's license.  Indeed, if the Reason Ban takes effect, Plaintiff McNicholas and other physicians who provide abortion services in Missouri will face unjustifiable risk in providing abortion care to patients if they know that a patient has had a "prenatal diagnosis, test, or screening indicating Down syndrome or potential for Down Syndrome"; or if the embryo or fetus' race or sex is discussed by or with the patient in the non-directive patient counseling; or if the patient asks the sex of the fetus during the ultrasound.  In order to be certain that they are not in violation of the Ban, these

physicians may be put in the position of having to violate both best medical practices and their patients' constitutionally protected privacy interests in making this most personal decision by probing a patient's reasons for seeking abortion care even when the patient does not volunteer that information so as to avoid personal legal liability.  McNicholas Decl. ¶¶ 60, 61.

For all these reasons, the harms Plaintiffs and their patients face are irreparable.

## IV.    THE BALANCE OF HARMS DECIDEDLY FAVORS INJUNCTIVE RELIEF

The balance of harms in this case is not remotely close.  Plaintiffs' patients will suffer enormous irreparable harm if they are stripped of fundamental constitutional rights, whereas Defendants risk nothing by an injunction that preserves the *status quo* as it has been for decades.  *See Jackson Women's Health Org.*, 379 F. Supp. 3d at 553; *EMW Women's Surgical Ctr., P.S.C.*, 2019 WL 1233575, at \*2.  The State will suffer no harm from non-enforcement of the Bans, which are plainly unconstitutional under long-standing binding precedent.  *See Chamber of Commerce of U.S.* v. *Edmondson*, 594 F.3d 742, 771 (10th Cir. 2010) (holding that defendant "does not have an interest in enforcing a law that is likely constitutionally infirm").  Given these circumstances, the balance of harms tips heavily in Plaintiffs' favor.

## V.    THE PUBLIC INTEREST WEIGHS HEAVILY IN FAVOR OF INJUNCTIVE RELIEF

The public interest greatly favors injunctive relief in cases, such as this, where a constitutional right is at stake because "it is always in the public interest to protect constitutional rights."  *Traditionalist Am. Knights of the Ku Klux Klan* v. *City of Desloge, Mo.*, 914 F. Supp. 2d 1041, 1051 (E.D. Mo. 2012).[11]  Granting injunctive relief here would protect the constitutional rights of Plaintiffs and their patients.  Accordingly, a preliminary injunction serves the public interest in this case.

---

[11]    *Accord Planned Parenthood Minn., N. Dakota, S. Dakota* v. *Daugaard*, 799 F. Supp. 2d 1048, 1077 (D.S.D. 2011); *Doctor John's, Inc.* v. *City of Sioux City*, 305 F. Supp. 2d 1022, 1042 (N.D. Iowa 2004).

**BOND IN THIS CASE**

This Court has wide discretion to set the preliminary injunction bond "in an amount that the court considers proper." Fed. R. Civ. Pro. 65(c); *Hill* v. *Xyquad, Inc.*, 939 F.2d 627, 632 (8th Cir. 1991). Plaintiffs respectfully submit that bond be set at no more than the nominal amount of $100 because Defendants are not at risk of harm should they later prevail in this litigation.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for a preliminary injunction or, in the alternative, a temporary restraining order to prevent enforcement of the Bans during the pendency of this action.

Dated: July 30, 2019

Respectfully submitted,

LAW OFFICE OF ARTHUR BENSON

*/s/ Arthur A. Benson II*

*/s/ Jamie Kathryn Lansford*
Arthur A. Benson II, #21107
Jamie Kathryn Lansford, #31133
4006 Central Avenue
Kansas City, MO 64111
Tel: (816) 531-6565
abenson@bensonlaw.com
jlansford@bensonlaw.com

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Claudia Hammerman (*Pro hac vice application to be filed*)
Daniel J. Klein (*Pro hac vice application to be filed*)
Allison C. Penfield (*Pro hac vice application to be filed*)
Melina M. Meneguin Layerenza (*Pro hac vice application to be filed*)
1285 Avenue of the Americas
New York, NY 10019
Tel: (212) 373-3000
chammerman@paulweiss.com
daklein@paulweiss.com
apenfield@paulweiss.com
mmeneguin@paulweiss.com

Jane B. O'Brien (*Pro hac vice application to be filed*)
Melissa R. Alpert (*Pro hac vice application to be filed*)
2001 K Street, N.W.
Washington, DC 20006
Tel: (202) 223-7300
jobrien@paulweiss.com
malpert@paulweiss.com

PLANNED PARENTHOOD FEDERATION OF AMERICA

Susan Lambiase (*Pro hac vice application to be filed*)
123 William St., Floor 9
New York, NY 10038
Tel: (212) 541-7800
susan.lambiase@ppfa.org

Julie Murray (*Pro hac vice application to be filed*)
1110 Vermont Avenue, N.W., Ste. 300
Washington, DC 20005
Tel: (202) 803-4045
julie.murray@ppfa.org

AMERICAN CIVIL LIBERTIES UNION FOUNDATION, INC.

Andrew D. Beck (*Pro hac vice application to be filed*)
Fiona Kaye (*Pro hac vice application to be filed*)
125 Broad St.
New York, NY 10004
Tel: (212) 549-2633
abeck@aclu.org
fkaye@aclu.org

AMERICAN CIVIL LIBERTIES UNION OF MISSOURI
FOUNDATION

Anthony E. Rothert, #44827
Jessie Steffan, #64861
Omri E. Praiss, #41850
906 Olive Street, Suite 1130
St. Louis, MO 63108
Tel: (314) 652-3114
trothert@aclu-mo.org
jsteffan@aclu-mo.org
opraiss@aclu-mo.org

Gillian R. Wilcox, #61278
406 West 34th Street, Suite 420
Kansas City, MO 64111
Tel: (816) 470-9938
gwilcox@aclu-mo.org

*Attorneys for Plaintiffs*

**CERTIFICATE OF NOTICE**

I hereby certify that a copy of the above and foregoing was transmitted via electronic mail this 30th day of July, 2019, on:

D. John Sauer  #58721
Solicitor General
Office of Missouri Attorney General Eric S. Schmitt
P.O. Box 899
Jefferson City, Missouri 65102
(573) 751-8870
(573) 751-0774 (telefacsimile)
John.Sauer@ago.mo.gov

/s/ Jamie Kathryn Lansford
Jamie Kathryn Lansford
*Attorney for Plaintiffs*