IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| REPRODUCTIVE HEALTH SERVICES OF PLANNED PARENTHOOD OF THE ST. LOUIS REGION, INC., et al., <br><br>  Plaintiffs, <br><br> v. <br><br> MICHAEL L. PARSON, in his official capacity as Governor of the State of Missouri, et al., <br><br>  Defendants. | Case No. 2:19-cv-4155-HFS |

## STATE DEFENDANTS' SUGGESTIONS IN SUPPORT OF MOTION TO DISMISS

Plaintiffs in this case include an abortion clinic and a physician who provides abortions. Doc. 1, ¶¶ 15-16. No woman who intends to seek an abortion is included as a Plaintiff. *Id.* The alleged rights and injuries Plaintiffs assert are exclusively rights and injuries to *their patients*, not direct injuries to themselves. *See, e.g., id.* ¶ 10, 55-61, 67-68, 70-75, 76, 80-88.

Defendants Governor Parson, Attorney General Schmitt, Director Williams, and Missouri State Board of Registration for the Healing Arts members James, Martin, Alexander, DiRenna, Glaser, Mathews, Razzaque, Tannehill, Taormina (collectively, the "State Defendants") respectfully request that this Court dismiss Plaintiffs' Complaint, Doc. 1, under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for at least three reasons. First, Plaintiffs fail to allege any facts to support their assertion of third-party standing to advance the interests of their abortion patients. Second, all Plaintiffs' claims are third-party claims raised under 42 U.S.C. § 1983, and Section 1983 does not authorize third-party claims, as the Eighth Circuit has repeatedly held. Third, Plaintiffs lack Article III standing and ripeness to challenge the race- and sex-based provisions of the Anti-Discrimination Law, Mo. Rev. Stat. § 188.038.3.

1

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint's "factual content [must] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 934 (8th Cir. 2012).

### A. Plaintiffs Have No Constitutional Right to Perform or Induce Abortions.

First, Plaintiffs do not possess, and do not assert, any constitutionally protected liberty interest of their own to perform or induce abortions. Plaintiffs do not assert such an interest in their Complaint. Rather, each of Plaintiffs' five Counts asserts an alleged violation only of "Plaintiffs' *patients'* rights to privacy and liberty guaranteed by the Fourteenth Amendment to the United States Constitution." Doc. 1, ¶¶ 80, 82, 84, 86, 88 (emphasis added).

Plaintiffs' concession is consistent with well-established law, which holds that abortion *providers* do not have a constitutionally protected liberty interest in performing or inducing abortions. Abortion providers, like Plaintiffs, "do not have a Fourteenth Amendment right to perform abortions." *Planned Parenthood of Greater Ohio v. Hodges*, 917 F.3d 908, 912 (6th Cir. 2019) (en banc). In *Casey*, the plurality opinion held: "Whatever constitutional status the doctor-patient relation may have as a general matter, in the present context it is *derivative* of the woman's position." *Casey*, 505 U.S. at 884 (plurality opinion) (emphasis added). Because abortion rights do not arise from the provider-patient relationship "[o]n its own," *Casey* rejected abortion doctors' claims that they had their own due process rights in the abortion context. *Id*. The plurality concluded that the providers had no constitutional right to perform abortions, and thus, "a

requirement that a doctor give a woman certain information as part of obtaining her consent to an abortion is, for constitutional purposes, no different from a requirement that a doctor give certain specific information about any medical procedure." *Id.* at 883. Abortion providers thus have no constitutional rights to perform abortions, to operate abortion clinics, or to litigate undue-burden challenges against state abortion laws on their own, and Plaintiffs here do not contend otherwise. *See, e.g.*, *Harris v. McRae*, 448 U.S. 297, 314 (1980); *Casey*, 505 U.S. at 846, 884.

B.   **Plaintiffs Lack Third-Party Standing to Assert Their Patients' Interests.**

Because they have no direct constitutional interests at stake in this lawsuit, Plaintiffs rely entirely on a derivative assertion of the putative constitutional rights of third parties—*i.e.*, those of "Plaintiffs' patients." Doc. 1, ¶¶ 80, 82, 84, 86, 88. But Plaintiffs do not allege facts sufficient to establish that they have third-party standing to assert the rights of their current or prospective patients, so their Complaint must be dismissed as a matter of law. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (holding that a plaintiff must establish standing at each successive stage of litigation, including the motion to dismiss stage); *Nebraska Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1039 (8th Cir. 2000).

Under both Article III and prudential doctrines, a litigant "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Third-party standing is a narrow exception to the court's usual "healthy concern that if the claim is brought by someone other than one at whom the constitutional protection is aimed, the claim not be an abstract, generalized grievance that the courts are neither well equipped nor well advised to adjudicate." *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984).

The narrow exception to the prohibition against third-party standing allows litigants to assert the rights of third parties only when: (1) the litigant has "a close relationship" to the third party who possesses the right; and (2) some "hindrance" prevents the third party's ability to protect his or her own interests. *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004). As with ripeness, the requirements for third-party standing (also known as *jus tertii* standing) rest on both constitutional and prudential foundations. *Kowalski*, 543 U.S. at 128; *see also Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984). Under this exception, the Supreme Court has refused to find third-party standing when there was a potential conflict of interest between a plaintiff and the absent parties that the plaintiff sought to represent. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 15 & n.7 (2004).

Here, Plaintiffs do not allege any facts that would establish either element of third-party standing—either (1) a relevant "close relationship" between them and their unidentified future patients, or (2) any "hindrance" to their patients' ability to assert their own rights. Their Complaint therefore fails to satisfy the *Iqbal-Twombly* pleading standard for third-party standing.

### 1. Plaintiffs do not allege facts sufficient to infer a "close relationship" with their patients.

Plaintiffs do not allege facts to support a "close relationship" with their patients for at least two reasons: (1) they purportedly assert only the interests of future patients, which is not sufficient; and (2) they do not allege any facts to establish the absence of any potential conflict of interest between them and their patients.

First, Plaintiffs do not appear to assert the interests of any current patients in their Complaint. Their Complaint does not identify any individual current patient or identify her interests with any specificity, and so it fails to satisfy basic pleadings standards as to current patients. *See* Doc. 1; *see also Summers v. Earth Island Institute*, 555 U.S. 488, 498 (2009)

(requiring a plaintiff "to make *specific* allegations establishing that at least one *identified* member had suffered or would suffer harm" to establish standing) (emphases added). Instead, Plaintiffs have opted to assert the interests only of unidentified *future* patients. Doc. 1. But such potential future relationships do not confer third-party standing. In *Kowalski*, the Supreme Court held that attorneys lacked third-party standing to bring claims on behalf of future clients who might request, but be denied, the appointment of appellate counsel under state law. *Kowalski*, 543 U.S. at 131. With no current lawyer-client relationships in place, the Court held that the attorneys lacked the requisite "close relationship" with the clients. *Id.* An "existing attorney-client relationship is, of course, quite distinct from the hypothetical attorney-client relationship posited here. . . . The attorneys before us do not have a 'close relationship' with their alleged 'clients'; indeed, they have no relationship at all." *Id*. *Kowalski* thus bars third-party standing for Plaintiffs seeking to represent unidentified possible future patients based on a "hypothetical [doctor-patient] relationship," which is "no relationship at all." *Id.*

Second, the relationship between Plaintiffs and their patients is rife with potential conflicts of interest. House Bill 126 ("HB 126") contains numerous detailed legislative findings regarding the State's justification for the Gestational Age Restrictions and the Anti-Discrimination Law, which findings are codified in Missouri law. *See* HB 126, Ex. A to State Defendants Suggestions in Opposition to Plaintiffs' Motion for Preliminary Injunction, at 6-14, 23-24; Mo. Rev. Stat. §§ 188.026.2(1)-(36), 188.026.5(1)-(8), 188.038.1(1)-(6). For example, the Missouri General Assembly found that "[a]bortion procedures performed later in pregnancy have a higher medical risk for women. Compared to an abortion at eight weeks gestational age or earlier, the relative risk increases exponentially at later gestational ages." HB 126, at 11; Mo. Rev. Stat. § 188.026.2(33)(a)-(d). Missouri also found that, "in addition to the short-term risks of an abortion,"

5

abortion presents "long-term physical and psychological consequences" to women seeking abortion, which risks "increase as abortions are performed or induced at later gestational ages." HB 126, at 12; Mo. Rev. Stat. § 188.026.2(34). And Missouri concluded that HB 126 advances the interests of "women more advanced in pregnancy who are at greater risk of harm from abortion." HB 126, at 12; Mo. Rev. Stat. § 188.026.2(35)(a).

Similarly, Missouri made detailed scientific findings indicating the likelihood that fetuses develop the ability to experience pain between 14 and 20 weeks' gestation LMP. HB 126, at 9-10; Mo. Rev. Stat. § 188.026.2(17)-(23). Missouri also found that "by fourteen or fifteen weeks gestational age or later, the predominant abortion method in Missouri . . . includes the dismemberment, disarticulation, and exsanguination of the unborn child, causing the unborn child's death"; and that, according to the U.S. Supreme Court, this method of abortion is "in some respects as brutal, if not more," than the partial-birth abortions that Missouri prohibits. HB 126, at 10; Mo. Rev. Stat. § 188.026.2(24)-(25).

Abortion providers like Plaintiffs, who have financial interests as well as personal motivations to promote and pursue abortions, do not have the same interests as their patients with respect to these concerns. Plaintiffs do not dispute that the risks of abortion to their patients increase exponentially at later gestational ages, yet they are challenging restrictions that would require them to perform safer abortions at earlier gestational ages for their patients. Similarly, the parent carrying an unborn child might undoubtedly weigh the risk of fetal pain during brutal second-trimester procedures differently than a physician who performs such abortions routinely and has a vested financial interest in their continuation. The relationship is fraught with many additional potential conflicts of interest as well. *See* HB 126, at 6-14, 23-24; Mo. Rev. Stat. §§ 188.026.2(1)-(36), 188.026.5(1)-(8), 188.038.1(1)-(6).

As the Supreme Court held in *Gonzales v. Carhart*, there is an inherent conflict of interest between abortion providers' single-minded advocacy for unfettered access to abortion, and the profound ambivalence that many women seeking abortions actually experience, that pervades doctor-patient relationships in the abortion context: "Whether to have an abortion requires a difficult and painful moral decision, which some women come to regret. In a decision so fraught with emotional consequence, some doctors may prefer not to disclose precise details of the abortion procedure to be used. It is, however, precisely this lack of information that is of legitimate concern to the State." *Gonzales v. Carhart*, 550 U.S. 124, 128-29 (2007).

Plaintiffs' Complaint provides no allegations to address these concerns or to establish that, notwithstanding the obvious potential for conflicts of interest, the requisite "close relationship" with all their unidentified future patients is somehow present. *See* Doc. 1.

### 2. Plaintiffs do not allege any "hindrance" to their patients' ability to assert their own interests.

Likewise, Plaintiffs do not and cannot allege any "hindrance" to their patients' ability to assert their own interests in this context. *See* Doc. 1.

The Supreme Court recognized in *Gonzales v. Carhart* that individual patients can bring their own challenges to abortion regulations, and that such as-applied challenges brought by individual abortion patients are the preferred method of constitutional adjudication. 550 U.S. at 167-68. And the Supreme Court acknowledged in *Singleton v. Wulff* that pseudonyms can address confidentiality issues, and that the mootness doctrine can encompass as-applied abortion challenges. *Singleton v. Wulff*, 428 U.S. 106, 117 (1976).

The history of abortion litigation bears out these holdings and shows that there is no hindrance that would bar women seeking abortions from bringing their own legal challenges to abortion restrictions. Examples of women seeking abortions asserting claims in their own right

7

have been extremely common from the onset of modern abortion litigation. *See, e.g.*, *Poelker v. Doe*, 432 U.S. 519, 519 (1977) (per curiam); *Beal v. Doe*, 432 U.S. 438, 441–442 (1977); *Maher v. Roe*, 432 U.S. 464, 467 (1977); *Bellotti v. Baird*, 428 U.S. 132, 137–138 (1976); *Doe v. Bolton*, 410 U.S. 179, 184 (1973); *Roe v. Wade*, 410 U.S. 113, 120 (1973). Through the present day, women seeking abortions have not faced any obstacle in suing in their own names or, if they prefer, through pseudonyms or guardians. *See, e.g*, *Azar v. Garza*, 138 S. Ct. 1790, 1792 (2018); *McCormack v. Herzog*, 788 F.3d 1017, 1022 (9th Cir. 2015); *Leavitt v. Jane L.*, 518 U.S. 137, 139 (1996); *Hodgson v. Minnesota*, 497 U.S. 417, 429 (1990); *H.L. v. Matheson*, 450 U.S. 398, 400 (1981); *Williams v. Zbaraz*, 448 U.S. 358, 36 (1980); *Harris v. McRae*, 448 U.S. 297, 303 (1980). In Missouri as well, there has been no hindrance to women bringing numerous challenges to abortion restrictions in their own right. *See, e.g.*, *Doe v. Parson*, 368 F. Supp. 3d 1345, 1347 (E.D. Mo. 2019), *appeal docketed*, No. 19-1578 (8th Cir. 2019); *Doe v. Parson*, 567 S.W.3d 625, 627 (Mo. 2019); *Satanic Temple v. Parson*, 735 F. App'x 900, 901 (8th Cir. 2018); *Rodgers v. Danforth*, 486 S.W.2d 258, 259 (Mo. 1972).

As noted above, a plaintiff must establish standing at each successive stage of litigation. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Nebraska Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1039 (8th Cir. 2000). Under this bedrock Article III rule, Plaintiffs must allege facts that establish a "close relation," including the lack of any potential conflict of interest, between themselves and the third-party patients whose rights they assert, as well as a "hindrance" to the third parties' assertion of their own rights. *Kowalski*, 543 U.S. at 130. Dismissal is appropriate where, as here, a complaint does not specify any information about why third parties "are hindered in their ability to protect their own interests." *Kelley v. Iowa State Univ.*

*of Sci. & Tech.*, 311 F. Supp. 3d 1051, 1060–61 (S.D. Iowa 2018). Plaintiffs' Complaint disregards this burden, and this Court should dismiss their claims. *Warth*, 422 U.S. at 501–02.

### 3. There is no special exception to the doctrine of third-party standing for abortion cases.

There is no special exception to the doctrine of third-party standing in the context of challenges to abortion restrictions. Even though the three-Justice plurality opinion in *Singleton v. Wulff* asserted that it might "generally [be] appropriate" for abortion providers to challenge abortion regulations on behalf of their patients, 428 U.S. 106, 118 (1976), that case also held that plaintiffs still must prove the requirements of third-party standing with evidence in each case, *Singleton*, 428 U.S. at 114. Indeed, in *Singleton* itself, the Court "looked primarily to two factual elements to determine whether the rule should apply *in a particular case*." *Id.* (emphasis added). So even if special circumstances were to arise in which women would be unable to challenge abortion regulations themselves, plaintiffs would have to plead and prove the elements of third-party standing, not merely assume them. *Lujan*, 504 U.S. at 561.

Because third-party standing in abortion cases has frequently gone unchallenged, courts have often assumed without analysis that abortion providers can proceed under a nominal assertion that they represent their patients' interests. *See, e.g.*, *Comprehensive Health of Planned Parenthood Great Plains v. Hawley*, 903 F.3d 750, 757 (8th Cir. 2018). And most abortion cases do not mention third-party standing at all. Either way, these cases are not binding precedent on this point. "When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed." *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144-45 (2011). If "questions of jurisdiction have been passed on in prior decisions *sub silentio*," a court thus "never considered itself bound when a subsequent case finally brings the jurisdictional issue." *Id.* (quoting *Hagans v. Lavine*, 415 U.S.

9

528, 535, n. 5 (1974)). The courts instead follow "the lead of Mr. Chief Justice Marshall who held that this Court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed *sub silentio*." *Id.* (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952). Indeed, the court "would risk error if it relied on assumptions that have gone unstated and unexamined." *Id.*

> **C. Plaintiffs Lack a Cause of Action Under 42 U.S.C. § 1983 to Assert Any Third-Party Claim to Challenge Any Provision of HB 126.**

Plaintiffs assert their claims as arising under 42 U.S.C. § 1983, Doc. 1, ¶ 4, and all the relief they seek is cognizable solely under section 1983. *See* Doc. 1, at 26-27. The Complaint seeks fees under 42 U.S.C. § 1988, confirming that the relief requested is under section 1983. Doc. 1, at 27. But Plaintiffs cannot assert third-party rights under Section 1983, and so they lack a cause of action to assert claims on behalf of their patients against any part of HB 126.

Under Section 1983, every "person" who acts under color of state law and deprives another person of his constitutional or federal rights "shall be liable *to the party injured*." 42 U.S.C. § 1983 (emphasis added). Nothing in the text of Section 1983 describes or allows for any suitable class of third-party plaintiffs. Instead, because Section 1983 employs the definite article ("*the* party injured," rather than "*a* party injured," *id.*), it authorizes as plaintiffs only those who fall under its earlier description of the "citizen" or "person" who has suffered the deprivation of his rights. This means that Section 1983 "authorizes suit by anyone alleging that he has been deprived of rights under the Constitution or federal law, and by no one else." David P. Currie, *Misunderstanding Standing*, 1981 Sup. Ct. Rev. 41, 45. Section 1983 "thus incorporates, but without exceptions, the Court's 'prudential' principle that the plaintiff may not assert the rights of third parties." *Id.* As the Supreme Court has noted, the "plain words of the statute impose liability whether in the form of payment of redressive damages or being placed under an injunction only for conduct which

10

'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976).

For these reasons, the Eighth Circuit has frequently held that Section 1983 does not allow third parties to assert the constitutional rights of others. *See, e.g.*, *Garrett v. Clarke*, 147 F.3d 745, 746 (8th Cir. 1998) ("Garrett may not base his Section 1983 action on a violation of the rights of third parties."); *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 801 (8th Cir. 2006) ("On an overbreadth challenge [plaintiff] would also be barred from collecting § 1983 damages which are available only for violations of a party's own constitutional rights."). The Eighth Circuit recently reaffirmed this holding in the identical context of Section 1981. *FCS Advisors, LLC v. Missouri*, 929 F.3d 618, 621 (8th Cir. 2019) ("[S]ection 1981 does not authorize derivative causes of action") (citing *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479–80 (2006)).

Section 1983 is Plaintiffs' sole alleged cause of action. Doc. 1, ¶ 4. Plaintiffs neither possess nor have clearly alleged any implied cause of action under the Supremacy Clause to seek equitable relief. *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015). Without a cause of action, Plaintiffs cannot sue, and their action cannot support their claim for attorneys' fees under 42 U.S.C. § 1988, for any assertion of constitutional rights other than Plaintiffs' own personal rights. Doc. 1, at 27.[1]

---

[1] Even if this issue went unaddressed in prior abortion cases, that would provide no support to Plaintiffs here. An issue not "raised in briefs or argument nor discussed in the opinion" is "not a binding precedent on this point." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952). Failing to raise an issue is "not remotely equivalent to finding that the underlying claim was frivolous." *Lewis v. Casey*, 518 U.S. 343, 353 (1996). For example, in *Ayotte*, the Supreme Court held that, even though *Stenberg* facially invalidated an abortion regulation for lacking a health exception because "the parties in *Stenberg* did not ask for, and we did not contemplate, relief more finely drawn," the Court could order "[i]n the case that is before us [that] we agree with New Hampshire that the lower courts need not have invalidated the law wholesale." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 321 (2006).

### D. Plaintiffs Lack Article III Standing and Ripeness to Challenge the Race- and Sex-Based Provisions of the Anti-Discrimination Law.

Even if Plaintiffs could step into the shoes of third parties for standing purposes, which they cannot, they lack Article III standing and ripeness to challenge to the race-based and sex-based discrimination prohibitions in Mo. Rev. Stat. § 188.038.3, because they admit they are unaware of any patients who might seek to violate those provisions.

For this Court to have Article III jurisdiction, a plaintiff must establish standing. *Allen v. Wright*, 468 U.S. 737, 751 (1984). The plaintiff must have suffered an "injury in fact"—*i.e.*, "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (internal quotations and punctuation omitted). A "particular injury" means "'that the injury must affect the plaintiff in a personal and individual way.'" *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133–34 (2011) (citing *Lujan*, 504 U.S. at 560 n. 1). A plaintiff thus must prove "concrete and particularized injuries using evidence" that would tend to show an individual burden from HB 126 on an identifiable person. *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018) (citation omitted). And this alleged injury must not be "too speculative"—the plaintiff must show "that the injury is certainly impending." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (citation omitted).

Article III and prudential considerations also require a plaintiff to prove that the case is ripe. To establish ripeness, a plaintiff must prove both that the issues have crystallized to the point of being fit for review and that there would be hardship to the parties from withholding court consideration. *Parrish v. Dayton*, 761 F.3d 873, 875 (8th Cir. 2014). This doctrine "prevent[s] courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial

interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967); *see also Nat'l Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803, 808 (2003).

Plaintiffs do not carry this burden. Instead, they allege and admit that they "are unaware of any patient that has sought an abortion based solely on the sex or race of the embryo or fetus." Doc. 3, at 8 n.6; Doc. 1, ¶¶ 69, 77; McNicholas Decl. ¶¶ 59-60. And Plaintiffs do not allege that they face any credible threat of enforcement in the face of their allegation that they are unaware of any current or future discriminatory instances under the race- and sex-based restrictions. *See, e.g.,* Doc. 1, ¶¶ 29, 76; Doc. 3, at 13-14.

Plaintiffs must allege that the record had crystallized to the point of showing that a non-speculative, concrete injury is impending for some particular woman. *Whitford*, 138 S. Ct. at 1931-33; *Lujan*, 504 U.S. at 561. The plaintiff invoking jurisdiction must "show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as a result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally." *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 135 (2011) (quotations omitted). If "the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed." *Warth v. Seldin*, 422 U.S. 490, 501–02 (1975); *see also Nebraska Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1039 (8th Cir. 2000).

Here, "the record is practically devoid of any information" about any impending effect of the law, and so "a court has no way to make that judgment." *Hawley*, 903 F.3d at 756. In cases like this, standing, the ripeness doctrine, and other "[r]ules of justiciability" counsel against a decision "based upon [an] amorphous and ill-defined factual record." *Id.* at 755 (quoting *Renne v. Geary*, 501 U.S. 312, 324 (1991)).

Absent any specific allegations regarding any women who have sought or might seek an abortion solely because of the child's race or sex, there is no "need to address the constitutional questions." *Hodel v. Virginia Surface Mining and Reclamation Ass'n*, 452 U.S. 264, 297 (1981). For these reasons, "[a]ny ruling now would mean 'our disposition . . . would lack the clarity and force which ought to inform the exercise of judicial authority.'" *Hawley*, 903 F.3d at 757 (quoting *Geary*, 501 U.S. at 324).

## CONCLUSION

For the reasons stated, the Court should dismiss all claims in the Complaint for lack of third-party standing, dismiss all claims in the Complaint for lack of a third-party cause of action under 42 U.S.C. § 1983, and dismiss Plaintiffs' challenge to the race- and sex-based provisions of Mo. Rev. Stat. § 188.038.3 for lack of Article III standing and ripeness.

Dated: August 19, 2019

Respectfully submitted,

**ERIC S. SCHMITT**
Attorney General

 /s/ *D. John Sauer*
D. John Sauer, #58721
 Solicitor General
Julie Marie Blake, #69643
 Deputy Solicitor General
Emily A. Dodge, #53914
 Assistant Attorney General
Missouri Attorney General's Office
Post Office Box 899
Jefferson City, MO 65102
Tel: (573) 751-8870
Fax: (573) 751-0774
E-mail: John.Sauer@ago.mo.gov

*Counsel for the State Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 19, 2019, the foregoing was filed electronically through the Court's electronic filing system to be served electronically on counsel for all parties.

*/s/ D. John Sauer*