IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
Central Division

Reproductive Health Services of Planned )
Parenthood of the St. Louis Region, Inc., )
on behalf of itself, its physicians, and its )
patients, and Colleen P. McNicholas, D.O., )
M.S.C.I., F.A.C.O.G, on behalf of herself )
and her patients, )
                                                      )       Case No. 2:19-cv-4155-HFS
    Plaintiffs, )
  )
    v. )
  )
Michael L. Parson, in his official capacity )
as Governor of the State of Missouri, et. al., )
  )
    Defendants. )

**Corrected**
**Memorandum and Order**

Plaintiffs, as abortion providers with facilities in St Louis ("RHS"), and on behalf of prospective patients, seek a preliminary injunction stopping several restrictive provisions of Missouri House Bill 126 from going into effect this Wednesday, August 28. Four sections would prohibit abortions in Missouri after various weekly dates, all prior to fetal viability.[1] Another section would prohibit abortions of all fetuses, viable and non-viable, where the pregnant woman's reason to abort is solely based on sex, race, or prospective Down Syndrome of an expected infant.[2]

The defendant Missouri officials offer procedural challenges before dealing with the merits. Doc. 35. They challenge "third-party standing" to assert interests of patients, assert absence of a cause of action under 42 U.S.C. § 1983, lack of Article III standing and ripeness to challenge the anti-discrimination provisions. All except the ripeness issue (relating to imminence of actual harm) may be readily rejected, at least for preliminary injunction purposes, for reasons noted by Judge Sutton in

---
[1] Mo. Rev. Stat. §§ 188.056, 188.057, 188.058, and 188.375.
[2] Mo. Rev. Stat. § 188.038.

1

Planned Parenthood of Greater Ohio v. Hodges, 917 F.3d 908 (6th Cir. en banc 2019). While the Sutton majority opinion rejected a Planned Parenthood constitutional claim of public funding discrimination, he wrote:

> Third-party standing cases (are distinguishable). In those cases, the Supreme Court held that abortion providers have standing to bring the due process challenges on behalf of their patients. See, e.g., Singleton v. Wulff, 428 U.S. 106, 118 (1976) (plurality); see also Diamond v. Charles, 476 U.S. 54, 65-66 (1986). But these decisions do not establish that the providers themselves have due process rights. Much to the contrary. The premise of these challenges is that the providers have no constitutional rights of their own in this setting. Why else go through the rigamarole of granting the provider third-party standing to file the claim?

A provider's standing to assert and litigate rights of anticipated future abortion patients was assumed by all members of the Supreme Court in Ayotte v. Planned Parenthood of Northern New England, 546 U.S. 320, 324 (2006). It was not questioned by present counsel in Comprehensive Health of Planned Parenthood Great Plains v. Hawley, 903 F.3d 750 (8th Cir. 2018) where footnote 7 indicates a limited challenge to standing, and the panel observed that "this is a third-party facial challenge." That is true here, except that the challenge to barring specified discriminatory reasons is an as-applied challenge, limited to prospective patients who might seek abortions of non-viable fetuses. I defer the limited ripeness issue and conclude that settled law supports this case procedurally.

On August 6, District Judge Baker in Arkansas dealt with almost identical questions and granted the requested preliminary relief as to non-viable fetuses. Little Rock Family Planning Services v. Rutledge, 2019 WL 3679623 (E.D. Ark.). Both the time limitations on abortions and the anti-discrimination provisions for non-viable fetuses have been uniformly rejected by federal courts, according to the Little Rock opinion and briefing here. Granting this motion in large part is required by law, as further explained below, there being no pertinent factual disputes.[3]

---

[3] As stated in defendants' disclosure summarizing the contents of their exhibits, filed in opposition to plaintiffs' motion (Doc. 31), their declarants support legislative findings that might justify prohibitions on abortions before fetal viability. They deal with contentions (now contested) as to fetal pain, harmful impacts of abortion on the women involved, heartbeat timing, ethical considerations, worldwide restrictions earlier than viability,

I.   Prohibited Reasons for Abortion of Non-viable Fetuses

The most challenging and novel of the issues in this case is the State's attempt to prohibit all abortions (including those of non-viable fetuses) for special reasons that are deemed contrary to public policy. Mo. Rev. Stat. § 188.038, effective August 28, 2019. The State would prohibit a pregnant woman's favoritism of males, for instance, or apparently healthy prospective infants while choosing to abort fetuses with disfavored characteristics. For present purposes I assume that almost everyone in our culture would be appalled by a pregnant woman's abortion of a fetus identified as female because the woman or the family preferred that she give birth to a boy. The legal issue is whether the public, through legislation, has a right to intervene and prohibit such a discriminatory or "selective" abortion of a fetus before viability. Plaintiffs do not challenge the validity of the prohibitions after viability, which duplicated existing law. Under existing Missouri law, no viable fetuses can be aborted, unless required by the woman's health. Mo. Rev. Stat. § 188.030.

The Supreme Court has not dealt with the merits of this question. Earlier this year, however, it declined to review a Seventh Circuit ruling that did prevent Indiana from restricting a discriminatory choice by pregnant women in that State. Box v. Planned Parenthood of Indiana and Kentucky, Inc., 139 S.Ct. 1780 (2019). The Court described the legislation as "barring the knowing provision of sex-, race-, or disability-selective abortions by abortion providers." Id at 1781. The denial of certiorari was explained by the novelty of the legal issues, which "have not been considered by additional Courts of

---

progress in evaluating early development, etc.. While these considerations might be considered pertinent by the Supreme Court in reevaluating abortion jurisprudence, they do not free the lower federal courts from standards previously established by that Court. A panel of the Eighth Circuit that advocated reconsideration by the Supreme Court of its abortion jurisprudence nevertheless acknowledged it was compelled to reject such reasons for changing pertinent law. MKB Management Corp. v Stenehjem, 795 F.3d 768, 773 (8th Cir. 2015). As discussed below, the current ruling turns on two questions of law announced by a majority of the Supreme Court, as it was constituted when Justice Kennedy retired – that is, the viability test and the categorical right of women seeking abortions of non-viable fetuses.

Appeals." Id. at 1782. The concurrence by Justice Thomas demonstrated great interest in the ultimate question of a State's authority, in his phrasing, to prevent "abortion from becoming a tool of modern-day eugenics," citing the recent State laws seeking to prevent abortions motivated by race, sex, genetic abnormality, and Down Syndrome. Id. at 1783.[4]

The panel opinion in the Indiana case that was denied certiorari stated simply that "the non-discriminatory provisions clearly violate well-established Supreme Court precedent holding that a woman may terminate her pregnancy prior to viability, and that the State may not prohibit a woman from exercising that right <u>for any reason</u>." <u>Planned Parenthood of Indiana and Kentucky, Inc. v. Commissioner of the Indiana State Dep't of Health</u>, 888 F.3d 300, 302 (7th Cir. 2018) (emphasis added). Judge Manion, expressing dissatisfaction, agreed that Supreme Court precedent invalidated the abortion motivation prohibition that Indiana sought to impose, but only "[b]ecause I have no choice but to follow Supreme Court precedent." Id. at 316.

The recent Arkansas decision reaches the same conclusion, for the same reason. That is the result reached by other federal court judges who have ruled the question. In the district court case affirmed by the Seventh Circuit, the ruling stated that under existing law, as established by the Supreme Court, a "woman's right to choose to terminate a pregnancy pre-viability is categorical." <u>Planned Parenthood of Ind. & Ky., Inc. v. Comm'r, Indiana State Dep't of Health</u>, 265 F.Supp.3d 859, 866 (S.D. Ind. 2017). In <u>Preterm-Cleveland v. Himes</u>, 294 F.Supp.3d 746 (S.D. Ohio 2018), the Indiana case was relied on to reach the same result. <u>Preterm</u> has been appealed and was argued in the Sixth

---

[4] There is apparently much popular interest in this phase of the new legislation. See front page article in the <u>Kansas City Star</u> of August 4, 2019, with the sub-head, "Missouri law denies abortion for fatal ("fetal"?) disorders." But the record here suggests that the proposed prohibition of certain controversial abortions affects only a small number of non-viable fetus abortions. Opening up the subject for legislation could, however, logically reach more common reasons for early abortions, such as the prospective illegitimacy of babies born to unmarried girls and women. Illegitimacy being a frequently disfavored status, perhaps it may be treated as comparable to health issues or disfavored sex or race characteristics. While there is no known legislation to protect the prospectively illegitimate, such legislation for non-viable fetuses could be legally evaluated similarly to the issues here. We are thus dealing with a potentially large problem, numerically as well as intrinsically important.

Circuit in January, 2019. Little Rock Family Services, supra, at p. 36. Significant rulings on this issue may be imminent.

Although other Supreme Court language is relied on to invalidate any prohibition of pre-viability abortions, the "essential holding" most quoted is from the plurality opinion in Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, 846 (1992), containing the rule that "[b]efore viability, the State's interests are not strong enough to support a prohibition of abortion or the imposition of a substantial obstacle to the woman's effective right to elect the procedure." It was repeated, "a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability." Id. at 879. Thus, cases to date have accepted the woman's "ultimate decision" and have rejected prohibitions of certain reasons for the decision.

Dissatisfaction has been voiced, as noted, perhaps most meaningfully by Judge Easterbrook in dissenting from the Seventh Circuit's close vote denying a rehearing en banc in the Indiana case. Planned Parenthood of Indiana and Kentucky Inc. v. Commissioner of the Indiana State Dept of Health, 917 F.3d 532 (2018). He argued that "Judges often said that employers could fire workers for any or no reason," and thereafter "regularly created exceptions when the discharge was based on race, sex, or disability." Id. at 536. Of course Supreme Court justices sometimes overstate principles, and then reword the rules. But an appellate court that modifies a rule is appropriately the court that announced the rule. Lower court judges do not often "correct" the language of the Supreme Court. While it can be speculated that the Supreme Court's language in Box implicitly invited appellate judges to review the merits of prohibitions of discriminatory abortions, any such invitation was not addressed to district judges.

There are no pertinent factual disputes on this aspect of the case. For present purposes I assume, in accordance with declarations offered by the Missouri defendants, that there are adequate public policy reasons to adopt the prohibitions against aborting fetuses because they are disfavored by the pregnant woman on grounds of sex, race or Down Syndrome likelihood. I recognize that a Down Syndrome abortion is a very debatable subject, but it would likely be a legislative issue rather than a

judicial issue if abortion jurisprudence, as established by the Supreme Court, permitted a legislative override of any aspect of a woman's right to abort a non-viable fetus. All judicial rulings so far preclude such a legislative override in this context. It is clear today that plaintiffs are likely to prevail in striking down the prohibited reasons law, insofar as it applies to non-viable fetuses.

Another legal point remains. The Missouri defendants argue that relief from a regulation of abortion cannot be obtained unless the statute imposes an undue burden on a large fraction of women seeking an abortion. E.g., Planned Parenthood of Arkansas & Eastern Oklahoma v. Jegley, 864 F.3d 953 (8th Cir. 2017). The courts that have dealt with such an issue in cases like the present one, however, have limited that test to statutes that "regulate" abortion practice, not cases like this one that impose a complete prohibition of certain classes of abortions for non-viable fetuses. Edwards v. Beck, 786 F.3d 1113 (8th Cir. 2015), ruled that the State cannot recharacterize a ban as a regulation, and thus lighten its obligation to respect the rights of pregnant women, as represented by providers. Id. at 1117. See also the same rationale in Isaacson v. Horne, 716 F.3d 1213, 1225 (9th Cir. 2013). In any event, at the preliminary injunction stage, the issue is whether plaintiffs are likely to prevail. With existing law as reviewed above, plaintiffs easily pass that test. But, as discussed below, that is not the only factor to be considered in exercising judicial discretion to grant or withhold a preliminary injunction.

II.   Prohibition of Abortions after 20 or Fewer Weeks

House Bill 126 attempts to make a second major change in abortion law - - it limits abortions after 8 weeks from the patient's last menstrual period ("LMP"). If this is deemed constitutionally forbidden, the weeks are extended to 14, then 18, and finally 20. Because viability has never occurred that early, so it is understood,[5] the effect of the legislation is to cut back the viability test, as adopted by

---

[5] Plaintiff Reproductive Health Services of Planned Parenthood of the St Louis Region ("RHS") uses 21 weeks and 6 days LMP as its guideline for providing pre-viability surgical abortions. McNicholas Decl. § 25. Doc. 3. This is consistent with the cases cited by the Eighth Circuit, where the current records of newborn infant survival have not reached below 21 or 22 weeks. MKB Management Corp. v. Stenehjem, 795 F.3d 768, 773 (8th Cir 2015). The Missouri authorities have not asserted that RHS has been violating the current prohibition of abortions of viable fetuses.

the Supreme Court in Casey. The Little Rock ruling on August 6 prohibits enforcement during litigation of very similar legislation in that State, although Arkansas stops at 18 rather than 20 weeks. However formulated, the legislation on its face conflicts with the Supreme Court ruling that neither legislative nor judicial limits on abortion can be measured by specified weeks of development of a fetus; instead, "viability" is the sole test for a State's authority to prohibit abortions where there is no maternal health issue. That is the lesson of Casey, previously quoted, as widely recognized by the lower courts, including the Eighth Circuit. *See also,* the concurrence of Justice O'Connor in Webster v. Reproductive Health Services, 492 U.S. 490, 528 (1989) (where testing at 20 weeks was permissibly required), repeating the language of Colautti v. Franklin, 439 U.S. 379, 388-89 (1979), that "'neither the legislature nor the courts may proclaim one of the elements entering into the assessment of viability – be it weeks of gestation . . . or any other single factor - as the determinant of when the State has a compelling interest in the life or health of the fetus. Viability is the crucial point.'" (emphasis added). The Missouri General Assembly has just done what Justice O'Connor declared is impermissible.

The Supreme Court's prohibition on a State's selecting a specific fetal age where abortion could be prohibited has been enforced in many cases, including the Little Rock case. A 20-week limit has been struck down in several. Bryant v. Woodall, 363 F.Supp.3d 611 (M.D.N.Car. 2019) (appealed 6/26/2019); McCormack v. Herzog, 788 F.3d 1017 (9th Cir. 2015) (Idaho statute); Isaacson v. Horne, 716 F.3d 1213 (9th Cir. 2013) (Arizona statute); Jane L. v. Bangerter, 809 F.Supp. 865 (D. Utah. 1992) (appealed on other issues).

It is thus highly likely that the listed weekly time limits on abortions will be ruled invalid in the final judgment in this case.

III.   Preliminary Injunction Evaluation Issues.

In addition to evaluating likelihood of success in obtaining a permanent injunction, I must consider the threat of irreparable harm to plaintiffs and patients if the challenged provisions of House

Bill 126 go into effect this week, the balance of harm to the parties if preliminary relief is granted, and the public interest. Dataphase Sys. Inc. v. C L Sys. Inc., 640 F.2d 109, 114 (8th Cir. 1981). I need also consider whether preservation of the status quo would be served by granting interim relief.

Enjoining new legislation pending litigation and before the effective date seems to be a method of preserving the status quo during the pendency of the lawsuit. Association of Equipment Manufacturers v. Burgum, 2017 WL 8791104 (D.N.Dak.). While federal courts should generally be very cautious before delaying the effect of State laws, the sense of caution may be mitigated when the legislation seems designed, as here, as a protest against Supreme Court decisions.

The hostility to, and refusal to comply with, the Supreme Court's abortion jurisprudence is most obviously demonstrated in the attempt to push "viability" protection downward in various weekly stages to 8 weeks LMP. This is contrary to repeated, clear language of the Court. The anti-discrimination section seeks to create novel exceptions to some plain but general language. That is a less questionable legislative practice. It does seem so likely wrong, however, that it should not be permitted to go into operation, unless the relief sought offers minimal demonstrable practical benefit – or, in other words, the denial of immediate relief is not demonstrably harmful.

The greatest impact of House Bill 126 would be to prohibit abortions in Missouri after 8 weeks LMP. This would prohibit more than two thirds of plaintiff RHS's patients from obtaining abortions and about half the reported abortions in Missouri. McNicholas Decl. ¶ 52. Crumbliss Decl. ¶ 14. Docs. 3 & 35. The impact of the 20-week rule seems likely to prohibit about 100 abortions performed each year. McNicholas Decl. § 52. I classify that as a significant interference with plaintiffs' service and the rights of its prospective patients, so it should be considered quite adequate as harm to justify immediate relief from the defective provisions of House Bill 126. The least impact would result from prohibiting the sex or race reasons for an abortion, the occurrence of which is unknown to the Chief Medical Officer of RHS. McNicholas Decl. § 59. An abortion before viability motivated by a Down Syndrome test would also be somewhat rare, given the window of time needed for adequate testing and consultation.

Bebbington Decl. §§ 9, 22-24, 43. And we do not know the frequency of those abortions in Missouri, where the testing rate might be greater or below testing elsewhere.

There is an absence of any information from RHS that would allow me to assess whether, if final judgment is possible in several months, the inability to schedule "Down syndrome abortions" would be likely to interfere with the abortion rights of real-life women. I asked counsel early in the morning of argument, "Why is there neither a disclaimer nor an estimate of 'Down Syndrome abortions' at RHS?" This issue remains entirely speculative after argument, perhaps because no estimate is possible, since Down Syndrome is rarely mentioned by patients. If so, there could be no sanctions, since the law requires knowledge before a provider is in violation.[6] Caution suggests I withhold a preliminary injunction against the anti-discrimination section, but remain open to an adequately supported renewed motion on this narrow issue.[7]

In plaintiffs' reply brief (Doc. 47) they candidly change the emphasis to perceived harm that compliance might cause RHS and its officials and medical personnel. They suggest criminal penalties or loss of licenses. Prosecutions seem even more speculative or unlikely than the possible loss of an abortion opportunity during the next several months by some pregnant woman and her family. The St. Louis Circuit Attorney, a named defendant, does not oppose plaintiffs' request for a preliminary injunction. Doc. 42, noted in Doc. 47, p. 1. License controversies on this subject also seem entirely unlikely. Both this court and the State Courts are open to RHS or any other target of a license cancellation. Unlike many individuals who seek abortions, legal assistance seems available, and the

---

[6] Plaintiffs complain that this provision will, if ultimately validated by the courts, cause them to engage in inappropriate, intrusive discussions with women seeking abortions. But one can imagine that if there is a legally validated prohibition, providers would protect themselves by adding to medical paperwork a question such as "Is this procedure being sought because of race, sex or Down syndrome?" One would guess this would lead to the effective discontinuance of "Down syndrome abortions" at RHS. Until there is finality on the legal issue, which currently tilts in favor of plaintiffs, one might suppose fewer questions would be asked, since they are not required, and that the status quo could be preserved without court order. At least this may be true for the next several months, which would diminish the likelihood of harm from denial of a preliminary injunction. If my supposition is mistaken, a further motion can be filed.

[7] The related issue of ripeness will apparently be the subject of further briefing. Doc. 33, p 12.

views expressed here should reduce the likelihood of harassment issues concerning the anti-discrimination section.

The public interest in this case at this time seems dominated by the analysis of which party is likely to prevail, which overwhelmingly favors plaintiffs, and seems unlikely to change dramatically in the next several months; that is, before final judgment can be entered.[8] A preliminary injunction in favor of plaintiffs is appropriate here, except as to § 188.038, the anti-discrimination section.

IV. Severability and Conditions

The Missouri General Assembly has made clear that it wishes to preserve as much of House Bill 126 as can be saved under current law. The various sections specifying prohibitions on abortions at various weeks prior to viability cannot be allowed to go into effect on August 28, as scheduled. The existing prohibition against abortion of viable fetuses remains in effect, and is not challenged, so a

---

[8] The apparent absence of material facts that are in dispute suggests that summary judgment may be the most expeditious way to advance this case toward an appeal.

In offering this procedural suggestion I am aware that the Missouri brief proposes slowing the case for development and consideration of a factual record, advising that last Monday it submitted extensive newly developed evidence. Doc. 35. Missouri has offered material for the record (and perhaps appellate or Supreme Court consideration) regarding the "discrimination" issues. There is also a good deal of material relating to fetus development and other issues outlined in Doc. 31. But the two basic issues regarding (1) restricting reasons for exercising abortion rights before viability and (2) banning abortions at various weekly stages before viability seemingly present pure legal questions. Both prohibitions very likely conflict with current abortion jurisprudence. Because I was the district judge in the Hawley case, supra, and because the Missouri defendants seek to equate the need for factual development in that case with this one, I note that the "factual issues" here and there are unrelated. Here I express the view, with other judges, that certain Supreme Court legal rulings are binding. In Hawley, on the "factual issues" I was of the view that certain Supreme Court factual rulings on "legislative facts" or "social facts" were binding, and could not be relitigated at the district court. See Doc. 113 in Case 16-4313. For illustration, I quoted Judge Easterbrook that "after a majority of the Supreme Court has concluded that photo ID requirements promote confidence, a single district judge cannot say as a 'fact' that they do not even if 20 political scientists disagree with the Supreme Court." Avoidance of facts here is thus in a different context, that is, whether a legal principle established by the Supreme Court can be rebutted by factual material offered in the lower courts.

preliminary injunction leaves Missouri with a public policy against abortions to the extent permitted by Constitutional law.

The statutory prohibition of discriminatory or selective abortions is unqualified, thus applying to both viable and non-viable fetuses. If it were possible to sever the language to limit the coverage to viable fetuses I would do so, but that cannot be done without judicial re-writing of the section, a practice to be avoided when possible. The desired result could be achieved, however, by using an as applied rather than a comprehensive injunction. A full facial challenge is not appropriate here because RHS limits its practice to non-viable fetus abortions (21 weeks, 6 days, LMP).

As is customary in cases of this nature, and consistently with Rule 65 (c), Fed. R. Civ. Proc., no bond will be required from plaintiffs in this case. Little Rock Family Planning Services, supra, 2019 WL 3679623, at * 90.

It is therefore ORDERED that the Missouri official defendants, their employees, agents, and successors in office are hereby PROHIBITED, pending litigation or further order of the court, from enforcing certain pre-viability bans on abortions, pursuant to H.B. 126; specifically, Mo. Rev. Stat. §§ 188.056, 188.057, 188.058, 188.375. The motion for preliminary injunction is DENIED without prejudice as to § 188.038.

Jurisdiction is retained to modify this order pending litigation, on motion or to make certain corrections.

                                                                                _/s/ Howard F. Sachs_
                                                                                Howard F. Sachs
                                                                                United States District Judge

August 27, 2019
Kansas City, Missouri