**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

REPRODUCTIVE HEALTH SERVICES OF PLANNED
PARENTHOOD OF THE ST. LOUIS REGION, INC., on
behalf of itself, its physicians, its staff, and its patients, and
COLLEEN P. MCNICHOLAS, D.O., M.S.C.I.,
F.A.C.O.G., on behalf of herself and her patients,

Plaintiffs,

v.

MICHAEL L. PARSON, in his official capacity as
Governor of the State of Missouri; ERIC S. SCHMITT, in
his official capacity as Attorney General of the State of
Missouri; KIMBERLY M. GARDNER, in her official
capacity as the Circuit Attorney for the City of St. Louis;
JADE D. JAMES, M.D., in her official capacity as
President of the Missouri State Board of Registration for
the Healing Arts; SARAH MARTIN, PH.D., M.P.P.,
M.P.H., in her official capacity as Secretary of the
Missouri State Board of Registration for the Healing Arts;
SAMMY L. ALEXANDER, M.D., JAMES A. DIRENNA,
D.O., JEFFREY S. GLASER, M.D., F.A.C.S.,
KATHERINE J. MATHEWS, M.D., NAVEED
RAZZAQUE, M.D., DAVID E. TANNEHILL, D.O., and
MARC K. TAORMINA, M.D., F.A.C.P., in their official
capacities as Members of the Missouri State Board of
Registration for the Healing Arts; and RANDALL
WILLIAMS, M.D., in his official capacity as Director of
the Department of Health & Senior Services of the State of
Missouri,

Defendants.

CIVIL ACTION
CASE NO. 2:19-cv-4155-HFS

**SUGGESTIONS IN SUPPORT
OF PLAINTIFFS' MOTION
FOR RECONSIDERATION
OR, IN THE ALTERNATIVE,
FOR A PRELIMINARY
INJUNCTION, AND
EXPEDITED BRIEFING
SCHEDULE**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................................... 1

I.      STATEMENT OF FACTS ........................................................................................ 3

      A.    Plaintiffs' Prior Motion ............................................................................... 3

      B.    The Court's August 27, 2019 Order ........................................................... 4

ARGUMENT ..................................................................................................................... 6

I.      APPLICABLE LEGAL STANDARDS .................................................................. 6

      A.    Motion for Reconsideration ........................................................................ 6

      B.    Motion for Preliminary Injunction ............................................................. 7

II.     THIS COURT HAS JURISDICTION TO RECONSIDER ITS DENIAL OF THE
      PRELIMINARY INJUNCTION AS TO THE DS REASON BAN OR, IN THE
      ALTERNATIVE, TO ISSUE A NEW ORDER PRELIMINARILY ENJOINING
      THE DS REASON BAN ......................................................................................... 7

III.    RECONSIDERATION OF THE COURT'S DENIAL OF A PRELIMINARY
      INJUNCTION AS TO THE DS REASON BAN IS APPROPRIATE ............................. 8

IV.    IN THE ALTERNATIVE, THIS COURT SHOULD ISSUE A NEW ORDER
      GRANTING A PRELIMINARY INJUNCTION BARRING ENFORCEMENT
      OF THE DS REASON BAN ................................................................................. 12

      A.    The Record Reflects That Plaintiffs Will Succeed on the Merits Because
            the DS Reason Ban Unconstitutionally Prohibits Pre-Viability Abortion
            Care ........................................................................................................... 12

      B.    Absent an Injunction of the DS Reason Ban, Plaintiffs and Patients in
            Missouri Will Suffer Irreparable Harm ..................................................... 12

      C.    The Balance of Harms Decidedly Favors Injunctive Relief from the DS
            Reason Ban ............................................................................................... 15

      D.    The Public Interest Weighs Heavily in Favor from Injunctive Relief on the
            DS Reason Ban ........................................................................................ 15

CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bellotti* v. *Baird*,
443 U.S. 622 (1979) (plurality opinion) ...............................................................10

*Chamber of Commerce of U.S.* v. *Edmondson*,
594 F.3d 742 (10th Cir. 2010) ............................................................................15

*Dataphase Sys. Inc.* v. *C L Sys., Inc.*,
640 F.2d 109 (8th Cir. 1981) (en banc) ................................................................7

*Deerfield Med. Ctr.* v. *City of Deerfield Beach*,
661 F.2d 328 (5th Cir. 1981) ..............................................................................11

*Gonzales* v. *Carhart*,
550 U.S. 124 (2007)................................................................................................5

*Jackson Women's Health Org.* v. *Currier*,
878 F. Supp. 2d 714 (S.D. Miss. 2012)...............................................................11

*Jackson Women's Health Org.* v. *Dobbs*,
379 F. Supp. 3d 549 (S.D. Miss. 2019), *appeal docketed,* No. 19-60455 (5th Cir. 2019) ......15

*Janousek* v. *Doyle*,
313 F.2d 916 (8th Cir. 1963) (per curiam)..............................................................8

*Jordan* v. *U.S. Dep't of Labor*,
No. 18-06129-CV-SJ-ODS, 2019 WL 1549722 (W.D. Mo. Apr. 9, 2019).........................7

*K.C.1986 Ltd. P'ship* v. *Reade Mfg.*,
472 F.3d 1009 (8th Cir. 2007) ..............................................................................6

*Kroupa* v. *Nielsen*,
731 F.3d 813 (8th Cir. 2013) ...............................................................................10

*M.B.* v. *Corsi*,
No. 2:17-CV-04102-NKL, 2018 WL 5504178 (W.D. Mo. Oct. 29, 2018)...........................10

*Murr Plumbing, Inc.* v. *Scherer Bros. Fin. Servs. Co.*,
48 F.3d 1066 (8th Cir. 1995) ................................................................................6

*United States* v. *Northshore Min. Co.*,
576 F.3d 840 (8th Cir. 2009) .................................................................................8

Case 2:19-cv-04155-BP   Document 60   Filed 09/04/19   Page 3 of 22

*Planned Parenthood of Ind. & Ky., Inc.* v. *Adams*,
No. 17-2428, 2019 WL 4024749 (7th Cir. Aug. 27, 2019) ...........................................11, 14

*Planned Parenthood of Minn., Inc.* v. *Citizens for Cmty. Action*,
558 F.2d 861 (8th Cir. 1977) ..........................................................................................10, 11

*Planned Parenthood of Se. Pa.* v. *Casey*,
505 U.S. 833 (1992)...............................................................................................................4

*Preterm-Cleveland* v. *Himes*,
294 F. Supp. 3d 746 (S.D. Ohio 2018), *appeal docketed*, No. 18-3329 (6th Cir. 2018) ...14, 15

*United States* v. *Queen*,
433 F.3d 1076 (8th Cir. 2006) (per curiam)..........................................................................7

*Richland/Wilkin Joint Powers Auth.* v. *U.S. Army Corps of Eng'rs*,
826 F.3d 1030 (8th Cir. 2016) ............................................................................................10

*W. Publ'g Co.* v. *Mead Data Cent. Inc.*,
799 F.2d 1219 (8th Cir. 1986) (per curiam)..........................................................................8

*Zurich Am. Ins.* v. *U.S. Eng'g Co.*,
No. 10-00656-CV-W-GAF, 2012 WL 13028219 (W.D. Mo. May 30, 2012).........................7

STATUTES

Mo. Rev. Stat. § 188.038(2)...................................................................................................1

Mo. Rev. Stat. § 188.056 ......................................................................................................1

Mo. Rev. Stat. § 188.057 ......................................................................................................1

Mo. Rev. Stat. § 188.058 ......................................................................................................1

Mo. Rev. Stat. § 188.375 ......................................................................................................1

OTHER AUTHORITIES

Mary Kay Kane, 11A Fed. Prac. & Proc. § 2962 (3d ed.)......................................................8

Fed. R. Civ. P. 12(a)(4)(A) ....................................................................................................3

Fed. R. Civ. P. 54(b) .............................................................................................................6

Fed. R. Civ. P. 56, advisory committee's note to 2009 amendment...................................3

## PRELIMINARY STATEMENT

On August 27, 2019, this Court issued a preliminary injunction prohibiting the Missouri official defendants, their employees, agents, and successors from enforcing pre-viability bans on abortions pursuant to the following provisions of Missouri House Bill 126 ("H.B. 126"): Mo. Rev. Stat. §§ 188.056, 188.057, 188.058 & 188.375 (the "Gestational Age Bans"). *See* Corrected Memorandum and Order at 11, Doc. No. 51 (the "Order"). The Court, at that time, exercised its discretion to withhold a preliminary injunction on a separate provision of H.B. 126—Section 188.038—despite holding that Plaintiffs "easily pass [the] test" of showing a likelihood to prevail in establishing that Section 188.038 is unconstitutional because it bans pre-viability abortions.[1] On August 29, 2019, State Defendants filed a notice of appeal from the district court's grant of a preliminary injunction on the Gestational Age Bans. Plaintiffs now ask that the Court reconsider its order denying the preliminary injunction as to Section 188.038(2), or, in the alternative, enter a new order to prohibit State Defendants from enforcing Section 188.038(2).

Section 188.038(2) (the "DS Reason Ban") prohibits abortion at any stage of pregnancy where the physician "knows" a patient is seeking an abortion "solely because of" a "prenatal diagnosis, test, or screening" indicating Down syndrome or the potential for it. Mo. Rev. Stat. § 188.038(2). The Court, in weighing the *Dataphase* factors for a preliminary injunction on the DS Reason Ban, concluded that it did not yet have sufficient information to assess whether, based on the frequency of procedures that fell within this category, the DS Reason Ban would actually interfere with the rights of patients to obtain an abortion "if final judgment is possible in

---

[1]  *See* Order at 6, 9; *see also id.* at 10 ("The public interest in this case at this time seems dominated by the analysis of which party is likely to prevail, which overwhelmingly favors plaintiffs . . . .").

several months." *See* Order at 8–9 & n.6 (citing *Dataphase Sys. Inc.* v. *C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). The Court reasoned that, pending further information, the status quo could be preserved without a preliminary injunction on the DS Reason Ban, despite Plaintiffs' overwhelming likelihood of success on the merits. *Id.* at 9 n.6. The Court, in several places in the Order, invited Plaintiffs to file another motion if this reasoning was mistaken or if Plaintiffs could provide more information. *Id.* at 9 ("I . . . remain open to an adequately supported renewed motion on this narrow issue."); *id.* at 9 n.6 ("If my supposition is mistaken, a further motion can be filed.").

For the reasons noted below, Plaintiffs believe that their initial showing was sufficient to support preliminary injunctive relief. But alternatively, Plaintiffs provide in this motion additional information to clarify the threat of irreparable harm that the DS Reason Ban presents for patients seeking abortion in Missouri during the pendency of this litigation. As discussed below, enforcement of the DS Reason Ban will irreparably harm the rights of real-life patients in Missouri to obtain abortion care and it will upset the status quo. Accordingly, the DS Reason Ban should be enjoined pending final judgment in this matter insofar as it could be applied to pre-viability abortions.

Moreover, this Court can and should resolve this motion now, despite the fact that the State Defendants have appealed the portions of this Court's Order that preliminarily enjoined the Gestational Age Bans. This Court continues to have jurisdiction to reconsider an issue which the State Defendants have not appealed, and to consider a renewed motion for a preliminary injunction of the DS Reason Ban based on additional evidence not previously considered by the Court.[2]

---

[2] While Plaintiffs believe this case is appropriate for summary judgment, it is not clear in practice that the case may be resolved "in several months." *See* Order at 9. Even putting aside whatever contested issues of material

# I. STATEMENT OF FACTS

## A. Plaintiffs' Prior Motion

Plaintiff Reproductive Health Services of Planned Parenthood of the St. Louis Region ("RHS") provides high-quality reproductive health care in St. Louis, Missouri. RHS currently offers pre-viability surgical abortion through 21 weeks and 6 days ("21.6") LMP. Plaintiff Colleen P. McNicholas, D.O., M.S.C.I., F.A.C.O.G., is a board-certified obstetrician-gynecologist ("OB/GYN") licensed to practice medicine in Missouri and four other states. She is the Chief Medical Officer for Planned Parenthood of the St. Louis Region and Southwest Missouri ("PPSLR"). In that capacity, Dr. McNicholas oversees all medical care provided through PPSLR's eight health centers and its affiliated clinic, RHS.

On behalf of themselves and their prospective patients, Plaintiffs sought a preliminary injunction to prevent enforcement of all provisions of H.B. 126 that would ban pre-viability abortions. Pls.' Mot. for a Prelim. Inj. & Expedited Briefing Schedule or, in the Alternative, a TRO, Doc. No. 2; Suggestions in Supp. of Pls.' Mot. for a Prelim. Inj. & Expedited Briefing Schedule or, in the Alternative, a TRO, Doc. No. 3 (together, the "Initial Motion"). Plaintiffs supported their Initial Motion with declarations from Missouri medical providers—Dr. McNicholas; and Dr. Michael W. Bebbington, the Director of the Fetal Care Center at St. Louis Children's Hospital. Decl. of Colleen P. McNicholas, D.O., M.S.C.I., F.A.C.O.G., Doc. No. 3-1;

---

fact State Defendants may try to manufacture, State Defendants' deadline to answer any summary judgment motion by Plaintiffs would be 21 days following the State Defendants' filing their answer, *see* Fed. R. Civ. P. 56, advisory committee's note to 2009 amendment; but State Defendants' answer would not be due until 14 days after the Court denied their Motion to Dismiss, *see* Fed. R. Civ. P. 12(a)(4)(A). Moreover, while Plaintiffs respectfully believe it is clear this Court retains jurisdiction to allow the case to proceed on the merits while appeal of its preliminary injunction order is pending, *see infra* note 5, this Court's recent order, staying further briefing on the State Defendants' Motion to Dismiss, further calls into question whether Plaintiffs can obtain a speedy resolution of the case. *See* Aug. 30, 2019 Order, Doc. No. 56.

At any rate, as set forth below, Plaintiffs' patients should not be deprived of their rights to obtain constitutionally-protected abortion services for even a period of several months.

Decl. of Michael W. Bebbington, M.D., M.H.Sc., Doc. No. 3-2. State Defendants opposed the Initial Motion, *see* State Defs.' Suggestions in Opp. to Pls.' Mot. for Prelim. Inj. and/or TRO, Doc. No. 35, with the exception of St. Louis Circuit Attorney Kimberly M. Gardner, who acknowledged that portions of H.B. 126 threatened "long-established abortion protections guaranteed by the United States Constitution" and who therefore did not oppose the Initial Motion. *See* Def. Kimberly M. Gardner's Mem. of Non-Opp. to Pls.' Mot for a Prelim. Inj. ¶ 4, Doc. No. 42. Plaintiffs filed reply suggestions, supported by additional declarations from Dr. McNicholas and Dr. Bebbington, and from Dr. Mary Norton, Director of the Division of Maternal Fetal Medicine at the University of California at San Francisco and Dr. Steven Ralston, the Chair of Obstetrics and Gynecology at Pennsylvania Hospital in Philadelphia. *See* Reply Suggestions in Further Supp. of Pls.' Mot. for a Prelim. Inj. & Expedited Briefing Schedule, , Doc. No. 47; Reply Decl. of Colleen P. McNicholas, D.O., M.S.C.I., F.A.C.O.G., Doc. No. 47-3; Reply Decl. of Michael W. Bebbington, M.D., M.H.Sc., Doc. No. 47-4; Decl. of Mary Norton, M.D., Doc. No. 47-1; Decl. of Steven J. Ralston, M.D., M.P.H., Doc. No. 47-2.

## B. The Court's August 27, 2019 Order

On August 27, 2019, this Court entered a preliminary injunction to prevent enforcement of the Gestational Age Bans, but denied Plaintiffs' request for a preliminary injunction against the Reason Ban. *See generally* Order.

This Court's Order acknowledged that "[a]ll judicial rulings so far preclude" pre-viability bans on abortion based on a patient's particular reason for seeking care. Order at 5–6. The Court also noted the well-settled rule first articulated in *Planned Parenthood of Southeastern Pennsylvania* v. *Casey*, 505 U.S. 833 (1992), that "a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability." Order at 5 (quoting

*Casey*, 505 U.S. at 846 (plurality opinion)); *see also Gonzales* v. *Carhart*, 550 U.S. 124, 146 (2007).

**Discussion of the DS Reason Ban.** The Court recognized that "it is clear today that plaintiffs are likely to prevail in striking down the prohibited reasons law, insofar as it applies to non-viable fetuses." Order at 6. The Court, however, also acknowledged that likelihood of success on the merits is "not the only factor to be considered in exercising judicial discretion to grant or withhold a preliminary injunction." *Id.* Specifically, the Court noted the *Dataphase* factors required it to "consider the threat of irreparable harm to plaintiffs and patients if the challenged provisions of House Bill 125 go into effect this week, the balance of harm to the parties if preliminary relief is granted, and the public interest." *Id.* at 8 (citing *Dataphase*, 640 F.2d at 114). As to the DS Reason Ban, the Court stated that while it seems "so likely wrong . . . that it should not be permitted to go into operation," enjoining it during the pendency of the litigation would not be worth it if "the relief sought offers minimal demonstrable practical benefit—or, in other words, the denial of immediate relief is not demonstrably harmful." *Id.* The Court then observed, that, because it lacked information on the frequency of procedures in Missouri that would violate the DS Reason Ban, it could not conclude whether it would be "likely to interfere with the abortion rights of real-life women" during the pendency of the litigation. *Id.* at 9. The Court also "suppose[d]" that until the conclusion of the litigation, Plaintiffs could aim to minimize the number of patients affected by the DS Reason Ban by asking fewer questions and thereby avoiding discussion of a patient's reason for choosing abortion. *Id.* at 9 n.6.

Ultimately, the Court indicated that it "remain[ed] open to an adequately supported renewed motion on th[e] narrow issue" of how the DS Reason Ban would impact the abortion

rights of actual patients. *Id.* at 9. It also noted that "[i]f [its] supposition"—that the status quo might be preserved without a court order through Plaintiffs asking "fewer questions" of patients—"is mistaken, a further motion may be filed." *Id.* at 9 n.6.

Citing to the initial declaration from Dr. Bebbington, the Court in its Order also suggested that "given the window of time needed for adequate testing and consultation," a ban on abortions based on a Down syndrome diagnosis might affect only a small subset of the universe of Plaintiffs' patients. *See* Order at 8–9. Similarly, during the hearing on Plaintiffs' motion for a preliminary injunction, the Court remarked that the DS Reason Ban might be unlikely to affect imminently patients in Missouri assuming that such abortions would only occur close to the 20 week mark, when the Court understood "people would have information about Down syndrome." Prelim. Inj. Hr'g Tr. 18:4–7. The Bebbington Declaration, however, reflects that a definitive Down syndrome diagnoses may be available much earlier than 20 weeks LMP— as early as 11 weeks LMP, through chorionic villus sampling ("CVS"). *See* Doc. No. 3-2 ¶ 22(a).

## ARGUMENT

### I. APPLICABLE LEGAL STANDARDS

#### A. Motion for Reconsideration

Federal Rule of Civil Procedure 54(b) permits this Court to reconsider its interlocutory order denying Plaintiffs' motion to enjoin the DS Reason Ban so as to grant a preliminary injunction of the DS Reason Ban "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Prior to the entry of final judgment, a district court "has the inherent power to reconsider and modify an interlocutory order." *See K.C.1986 Ltd. P'ship* v. *Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007); *Murr Plumbing, Inc.* v. *Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1070 (8th Cir. 1995) (same);

*Jordan* v. *U.S. Dep't of Labor*, No. 18-06129-CV-SJ-ODS, 2019 WL 1549722, at *1 (W.D. Mo. Apr. 9, 2019) (same). "[A] court may grant reconsideration of an order under Rule 54(b) to," among other things, "correct any clearly or manifestly erroneous findings of fact or conclusions of law." *Zurich Am. Ins.* v. *U.S. Eng'g Co.*, No. 10-00656-CV-W-GAF, 2012 WL 13028219, at *2 (W.D. Mo. May 30, 2012) (citation omitted). Because "reconsideration is grounded in equity," it "should be used to 'prevent a judgment from becoming a vehicle of injustice.'" *Id.* (citations omitted).

### B. Motion for Preliminary Injunction

To decide a motion for preliminary injunction, the court considers: (1) the probability that the movant will succeed on the merits; (2) the threat of irreparable harm; (3) the balance between this harm and the injury that will be inflicted on other parties by granting the injunction; and (4) the public interest. *Dataphase Sys., Inc.*, 640 F.2d at 114.

### II. THIS COURT HAS JURISDICTION TO RECONSIDER ITS DENIAL OF THE PRELIMINARY INJUNCTION AS TO THE DS REASON BAN OR, IN THE ALTERNATIVE, TO ISSUE A NEW ORDER PRELIMINARILY ENJOINING THE DS REASON BAN

This Court has the authority and jurisdiction to entertain (and grant) this motion relating to the DS Reason Ban notwithstanding the fact that the State Defendants have filed a notice of appeal of this Court's Order preliminarily enjoining the Gestational Age Bans.[3] "Although a federal district court and a federal court of appeals should not assert jurisdiction over a case at the same time, a notice of appeal only divests the lower court over aspects of the case that are the subject of the appeal." *United States* v. *Queen*, 433 F.3d 1076, 1077 (8th Cir. 2006) (per curiam).

---

[3] Plaintiffs similarly do not read the Court's recent order (Aug. 30, 2019 Order, Doc. No. 56) staying briefing on State Defendants' Motion to Dismiss to prohibit this filing, especially in light of the Court's invitation in its August 27, 2019 Order that "a further motion can be filed." Order at 9 n.6.

State Defendants have appealed only this Court's "order entering a preliminary injunction" against the Gestational Age Bans. Notice of Appeal, Doc. No. 53. They did not appeal—and would have had no reason to appeal[4]—this Court's denial without prejudice of Plaintiffs' motion to enjoin the separate DS Reason Ban. *See* Order at 11 (granting motion for preliminary injunction in part as to some portions and denying in part as to other portions).[5] Therefore, the appeal does not divest this Court of jurisdiction over Plaintiffs' request to reconsider the denial of preliminary injunctive relief with respect to the DS Reason Ban, or, in the alternative, to consider a new preliminary injunction motion with respect to the DS Reason Ban.

## III.  RECONSIDERATION OF THE COURT'S DENIAL OF A PRELIMINARY INJUNCTION AS TO THE DS REASON BAN IS APPROPRIATE

At the time of its August 27, 2019 ruling, this Court was not persuaded that Plaintiffs had shown that the DS Reason Ban threatened them and their patients with irreparable harm. Plaintiffs respectfully ask this Court to reconsider its conclusion in that regard based on the applicable evidence in the Initial Motion and the Court's invitation to submit a subsequent motion.

The record is clear that RHS provides abortion care to patients who have received a fetal Down syndrome diagnosis and that RHS and its physicians cannot avoid knowledge of the

---

[4]  *Cf. United States* v. *Northshore Min. Co.*, 576 F.3d 840, 846 (8th Cir. 2009) ("A party who receives all that he has sought generally is not aggrieved by the judgment affording the relief and cannot appeal from it." (quoting *Deposit Guar. Nat'l Bank* v. *Roper*, 445 U.S. 326, 333 (1980))).

[5]  *See also W. Publ'g Co.* v. *Mead Data Cent. Inc.*, 799 F.2d 1219, 1229 (8th Cir. 1986) (per curiam); *Janousek* v. *Doyle*, 313 F.2d 916, 920 (8th Cir. 1963) (per curiam) ("[T]he filing of the notice of appeal from [an interlocutory order denying preliminary injunction motion] does not . . . divest the district court of jurisdiction to proceed with the cause with respect to any matter not involved in the appeal . . . ."); Mary Kay Kane, 11A Fed. Prac. & Proc. § 2962 (3d ed.) ("An appeal from the grant or denial of a preliminary injunction does not divest the trial court of jurisdiction or prevent it from taking other steps in the litigation while the appeal is pending.").

diagnosis.

In the declarations she submitted with Plaintiffs' Initial Motion, Plaintiff McNicholas explained that she is personally aware that patients have sought and do seek abortions at RHS based solely or in part on a Down syndrome diagnosis. *See* Doc. No. 3-1 ¶ 57. While, "consistent with best medical practices," RHS does not require patients to explain why they are seeking abortions," *id*. ¶ 27, as Dr. McNicholas explained, she (like other doctors providing abortion care at RHS) becomes aware of such reasons because patients may volunteer them during pre-procedure counseling, *id*., or because the particular patient has been specifically referred to RHS by maternal-fetal medicine physicians or genetic counselors following the diagnosis, *id*. ¶¶ 31, 57. Dr. McNicholas made clear that, because of the legal jeopardy created by the DS Reason Ban, Plaintiffs will be forced to turn away such patients while the DS Reason Ban is in effect. *Id.* ¶ 58.

The Court suggested that the number of patients affected by the Reason Ban would be necessarily small "given the window of time needed for adequate testing and consultation." Order at 8–9. At the hearing on this issue, the Court questioned whether "there's a realistic likelihood that a preliminary injunction is needed" as to the DS Reason Ban to prevent harm to Missouri patients, based on the assumption that it would only be at the 20-week gestational age "when people would have information about Down syndrome" and relatively few abortions occur at or after that time period. Prelim. Inj. Hr'g Tr. 18:4–13. This assumption, however, was contrary to other key evidence regarding Down syndrome diagnoses, namely that through CVS, a diagnosis is available as early as 11 weeks LMP. *See* Doc. No. 3-2 ¶ 22(a) (noting "CVS generally is performed between approximately 10-13 weeks LMP" and "[r]esults may be available as soon as one week afterward"); *see also* Prelim. Inj. Hr'g Tr. 19:2–5. This means

that the "window" during which patients may know about a Down syndrome diagnosis is significantly larger than the Court assumed; more than 17.9 percent of all abortions that RHS provided in 2016, 2017, and 2018 occurred after 11 weeks. *See* Doc. No. 3-1 ¶ 52 (noting "RHS provided approximately 1,968 second-trimester abortions" out of a total of 10,942 abortions provided during the three-year time period of 2016, 2017, and 2018).

**Imminence and irreparability of harm.** Moreover, the requirement to show imminent and irreparable harm does not require that an injury occur frequently or that it is immediately about to occur. Accordingly, no case has required that any threshold number of patients will face imminent deprivation of their constitutional rights before a statute's harm can be deemed irreparable and preliminarily enjoined. Rather, an injury is "irreparable," and therefore serves as a basis for preliminary injunctive relief, if it "cannot be remedied by a later award of money damages." *Kroupa* v. *Nielsen*, 731 F.3d 813, 820 (8th Cir. 2013). Moreover, "the alleged harm need not be occurring or be certain to occur before a court may grant [a preliminary injunction]" *Richland/Wilkin Joint Powers Auth.* v. *U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1037 (8th Cir. 2016) (quoting *Michigan* v. *U.S. Army Corps of Eng'rs*, 667 F.3d 765, 788 (7th Cir. 2011)).

"A threat to a constitutional right is generally presumed to constitute irreparable harm." *M.B.* v. *Corsi*, No. 2:17-CV-04102-NKL, 2018 WL 5504178, at *5 (W.D. Mo. Oct. 29, 2018); *see also, e.g.*, *Planned Parenthood of Minn., Inc.* v. *Citizens for Cmty. Action*, 558 F.2d 861, 867 (8th Cir. 1977) (explaining that interference "with the exercise of [Planned Parenthood's] constitutional rights and the rights of its patients supports a finding of irreparable injury"). This presumption of irreparable harm applies with special force in the context of the fundamental right to abortion, because it is a decision that "simply cannot be postponed, or it will be made by default with far-reaching consequences." *See Bellotti* v. *Baird*, 443 U.S. 622, 643 (1979)

(plurality opinion). As such, courts have not hesitated to uphold preliminarily injunctions of abortion restrictions that, if enforced, would clearly violate patients' constitutional rights. *See, e.g.*, *Citizens for Cmty. Action*, 558 F.2d at 867; *Planned Parenthood of Ind. & Ky., Inc.* v. *Adams*, No. 17-2428, 2019 WL 4024749, at *15 (7th Cir. Aug. 27, 2019) ("A final judgment in Planned Parenthood's favor would not undo the irreparable harm to which its patients would have been subjected in the meantime, absent the injunction."); *Deerfield Med. Ctr.* v. *City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) ("That the injury resulting from defendants' actions is minimized by the presence of other abortion facilities does not eliminate or render harmless the potential continuing constitutional violation of a fundamental right.").

That Plaintiffs could not provide the precise number of patients that will ultimately be affected by the DS Reason Ban during the pendency of this litigation provides no basis to conclude that the threat is not sufficiently imminent or irreparable. As Dr. McNicholas has explained, "some of RHS's patients seek abortions based solely or in part" on a prenatal diagnosis of Down syndrome and if the DS Reason Ban remains in effect, "RHS will be forced to stop providing safe and effective pre-viability abortion care that [these] patients want and need." Doc. No. 3-1 ¶¶ 57–58. Plaintiffs respectfully submit that, because the record is clear that the law would interfere with patients' constitutional rights, this Court should reconsider its ruling to find sufficient threat of irreparable injury. *See, e.g.*, *Jackson Women's Health Org.* v. *Currier*, 878 F. Supp. 2d 714, 719 (S.D. Miss. 2012) (because defendants "have never promised to abstain from future prosecution" of a likely unconstitutional abortion restriction, the law would have "a chilling effect" and thus "an irreparable injury currently exists").[6]

---

[6]    While this Court has suggested that "[l]icense controversies" under the DS Reason Ban "seem entirely unlikely," and that the courts "are open to RHS or any other target of a license cancellation," Order at 9, Plaintiffs respectfully submit that the pending license challenge that RHS faces—and in which it came within a day of having to cease operations—do not leave either RHS, whose license is subject to DHSS, or the

**IV.    IN THE ALTERNATIVE, THIS COURT SHOULD ISSUE A NEW ORDER GRANTING A PRELIMINARY INJUNCTION BARRING ENFORCEMENT OF THE DS REASON BAN**

Alternatively, Plaintiffs respectfully request that this Court grant Plaintiffs' new motion for a preliminary injunction to prohibit State Defendants from enforcing the DS Reason Ban.

**A.    The Record Reflects That Plaintiffs Will Succeed on the Merits Because the DS Reason Ban Unconstitutionally Prohibits Pre-Viability Abortion Care**

On the basis of the parties' previous papers and oral argument, this Court has already concluded that the Plaintiffs are "overwhelmingly" likely to prevail on the merits of their challenges to the DS Reason Ban.  *See, e.g.*, Order at 6 ("It is clear today that plaintiffs are likely to prevail in striking down the prohibited reasons law, insofar as it applies to non-viable fetuses").  Plaintiffs will not burden the Court by repeating those arguments, which were comprehensively briefed, but simply incorporate them here by reference.

**B.    Absent an Injunction of the DS Reason Ban, Plaintiffs and Patients in Missouri Will Suffer Irreparable Harm**

Plaintiffs submitted evidence showing that, absent a preliminary injunction, Plaintiffs and their patients would be irreparably harmed by the DS Reason Ban, given Plaintiff McNicholas's awareness that patients have sought and do seek abortions at RHS based solely or in part on a Down syndrome diagnosis, which may be obtained as early as 11 weeks LMP.  *See supra* at 8–9. Should the Court conclude that, notwithstanding the explanations above, Plaintiffs' initial evidence remains unclear, Dr. McNicholas now submits a supplemental declaration further

---

physicians who provide abortion care at RHS, whose licenses are subject to the State Board of Registration for the Healing Arts, with the same view.  *See* Order at 3, *Reproductive Health Servs. of Planned Parenthood of the St. Louis Region* v. *Parson*, No. 1922-CC02395 (Mo. Cir. Ct. May 31, 2019) (granting temporary restraining order allowing clinic to remain operational on the same day its license was to expire at midnight).

In all events, as Dr. McNicholas's initial declaration made clear and as underscored by the declaration she submits in connection with this motion, given the risks, if the DS Reason Ban is in force during the pendency of this litigation, RHS has concluded that it will have to turn away patients seeking abortion care where the physician has any knowledge that the patient received a screening test or diagnosis indicating Down syndrome. That patient would not be able to secure abortion care in Missouri.

demonstrating that the threat is in no way speculative and that real-life patients would be denied pre-viability abortion care if the DS Reason Ban is not enjoined. Supplemental Declaration of Colleen P. McNicholas, D.O., M.S.C.I., F.A.C.O.G. ("McNicholas Suppl. Decl.") (Exhibit 1). The declaration reflects that:

- Abortion procedures that would violate the DS Reason Ban are not speculative and routinely occur at RHS, as supported by physician knowledge and a recent record search that is necessarily underinclusive; McNicholas Suppl. Decl. ¶¶ 9–11.

- In the course of the non-directive counseling provided at RHS, some patients volunteer that they are seeking an abortion on the basis of a fetal anomaly, including a fetal diagnosis of Down syndrome. Given the enforcement climate, once an RHS physician knows that a patient has been diagnosed with a fetal anomaly, it would be too risky to provide the requested abortion without asking whether the diagnosis is Down syndrome. If an RHS physician learns that the diagnosis is Down syndrome, the physician would have to turn the patient away and would be unable to provide the abortion care the patients seeks.

- Physicians at RHS cannot avoid these conversations or knowledge of these reasons: It would be anathema to the doctor-patient relationship and contravene best medical practices as well as a physician's ethical obligations if RHS physicians were to deliberately discourage patients seeking care and consultation from imparting whatever facts, feelings, or concerns they wish to impart to their doctors about the abortion they are seeking. Indeed, some patients having an abortion because of a fetal anomaly feel a strong need to discuss the reason for their decision with their physician, and it is an important part of patient-centered care to allow patients the opportunity to do this to the degree they choose to. McNicholas Suppl. Decl. ¶ 17.

- Regardless of what is shared by patients during counseling, doctors providing abortion care at RHS also learn that specific patients are seeking abortion based on a fetal anomaly, including a fetal diagnosis of Down syndrome, because many of these patients come to RHS based on referrals from MFM physicians and genetic counselors who specifically impart this information and who may also send medical records to RHS indicating the diagnosis. With such knowledge, physicians at RHS will be unable to provide abortions to such patients. McNicholas Suppl. Decl. ¶¶ 6, 13.

- Because the DS Reason Ban is currently in effect, RHS can no longer provide a pre-viability abortion to a patient where the physician learns of a potential diagnosis of Down syndrome, and instead RHS is now forced to turn those patients away. McNicholas Suppl. Decl. ¶ 13.

- Down syndrome can be diagnosed as early as 11 weeks through CVS, so the potential universe of affected patients that could be impacted by the DS Reason Ban includes those in the first trimester of pregnancy. *Id.* ¶ 14; Doc. No. 3-2 ¶ 22(a).

Thus, it is simply no answer for physicians at RHS to ask fewer questions as part of their counseling of patients. Order at 9 n.6. Under the DS Reason Ban and corresponding reporting requirements, Dr. McNicholas and other physicians providing abortion care who are aware of a potential Down syndrome diagnosis—either because they learn the fact upon referral and/or because the patient volunteers information about a fetal anomaly in non-directive counseling— will have no choice but to turn the pregnant patient away. Doc. No. 3-1 ¶ 60; McNicholas Suppl. Decl. ¶¶ 6, 13. This amounts to irreparable harm, and entitles Plaintiffs to preliminary injunctive relief with respect to the DS Reason Ban. *See, e.g.*, *Adams*, 2019 WL 4024749, at *15 (noting that time sensitivities may give rise to irreparable injury where abortion rights are concerned); *Preterm-Cleveland* v. *Himes*, 294 F. Supp. 3d 746, 757 (S.D. Ohio 2018) ("That Plaintiffs'

patients will have to either travel out of state to obtain the care to which they are constitutionally entitled, or otherwise carry a child to term against their wishes, establishes that they will incur an irreparable injury."), *appeal docketed*, No. 18-3329 (6th Cir. 2018).

**C.** **The Balance of Harms Decidedly Favors Injunctive Relief from the DS Reason Ban**

The balance of harms in this case is not remotely close. The State Defendants risk nothing by an injunction that preserves the *status quo* as it has been for decades, and as the Court intended it to be preserved. *See Jackson Women's Health Org.* v. *Dobbs*, 379 F. Supp. 3d 549, 553 (S.D. Miss. 2019) (noting that patients' injury "outweighs any interest the State might have in banning abortions" around 6 weeks LMP so that any enforcement delay resulting from the abortion will "protect[] this established right and the rule of law"), *appeal docketed,* No. 19-60455 (5th Cir. 2019); *see also Chamber of Commerce of U.S.* v. *Edmondson*, 594 F.3d 742, 771 (10th Cir. 2010) (holding that the State "does not have an interest in enforcing a law that is likely constitutionally infirm"). Given these circumstances, the balance of harms tips heavily in Plaintiffs' favor.

**D.** **The Public Interest Weighs Heavily in Favor from Injunctive Relief on the DS Reason Ban**

As the Court has already noted, "[t]he public interest in this case at this time seems dominated by the analysis of which party is likely to prevail, which overwhelmingly favors plaintiffs." Order at 10.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court reconsider its denial of the Preliminary Injunction as to the DS Reason Ban, or, in the alternative, grant Plaintiffs' new motion for a preliminary injunction to prevent the enforcement of the DS Reason Ban.

Dated:  September 4, 2019

Respectfully submitted,

LAW OFFICE OF ARTHUR BENSON

*/s/ Arthur A. Benson II*

*/s/ Jamie Kathryn Lansford*
Arthur A. Benson II, #21107
Jamie Kathryn Lansford, #31133
4006 Central Avenue
Kansas City, MO 64111
Tel: (816) 531-6565
abenson@bensonlaw.com
jlansford@bensonlaw.com

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Claudia Hammerman (*Pro hac vice*)
Daniel J. Klein (*Pro hac vice*)
Allison C. Penfield (*Pro hac vice*)
Melina M. Meneguin Layerenza (*Pro hac vice*)
Kelly D. Garcia (*Pro hac vice* application to be filed)
1285 Avenue of the Americas
New York, NY 10019
Tel: (212) 373-3000
chammerman@paulweiss.com
daklein@paulweiss.com
apenfield@paulweiss.com
mmeneguin@paulweiss.com

Jane B. O'Brien (*Pro hac vice*)
Craig Benson (*Pro hac vice*)
Melissa R. Alpert (*Pro hac vice*)
2001 K Street, N.W.
Washington, DC 20006
Tel: (202) 223-7300
jobrien@paulweiss.com
malpert@paulweiss.com

16

PLANNED PARENTHOOD FEDERATION OF AMERICA

Susan Lambiase (*Pro hac vice application to be filed*)
123 William St., Floor 9
New York, NY 10038
Tel: (212) 541-7800
susan.lambiase@ppfa.org

Julie Murray (*Pro hac vice application to be filed*)
1110 Vermont Avenue, N.W., Ste. 300
Washington, DC 20005
Tel: (202) 803-4045
julie.murray@ppfa.org

AMERICAN CIVIL LIBERTIES UNION FOUNDATION, INC.

Andrew D. Beck (*Pro hac vice application to be filed*)
Fiona Kaye (*Pro hac vice application to be filed*)
125 Broad St.
New York, NY 10004
Tel: (212) 549-2633
abeck@aclu.org
fkaye@aclu.org

AMERICAN CIVIL LIBERTIES UNION OF MISSOURI
FOUNDATION

Anthony E. Rothert, #44827
Jessie Steffan, #64861
Omri E. Praiss, #41850
906 Olive Street, Suite 1130
St. Louis, MO 63108
Tel: (314) 652-3114
trothert@aclu-mo.org
jsteffan@aclu-mo.org
opraiss@aclu-mo.org

Gillian R. Wilcox, #61278
406 West 34th Street, Suite 420
Kansas City, MO 64111
Tel: (816) 470-9938
gwilcox@aclu-mo.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF NOTICE

I hereby certify that on September 4th, 2019, the foregoing was filed electronically through the Court's electronic filing system to be served electronically on counsel for all parties.

/s/ *Arthur A. Benson II*

Arthur A. Benson II
*Attorney for Plaintiffs*