IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
Central Division

Reproductive Health Services of Planned )
Parenthood of the St. Louis Region, Inc., )
on behalf of itself, its physicians, and its )
patients, and Colleen P. McNicholas, D.O., )
M.S.C.I., F.A.C.O.G, on behalf of herself )
and her patients, )
                                                     )    Case No. 2:19-cv-4155-HFS
    Plaintiffs, )
                                                     )
    v. )
                                                     )
Michael L. Parson, in his official capacity )
as Governor of the State of Missouri, et. al., )
                                                     )
    Defendants. )

## ORDER DENYING PARTIAL STAY

The State Defendants seek a partial stay (Doc. 54) pending appeal of the preliminary injunction (Doc. 51), insofar as it temporarily protects abortions at 20 weeks' gestation, several weeks earlier than plaintiffs voluntarily cease conducting rather belated abortions of non-viable fetuses. The State Defendants offer little to legally justify prohibitions that are facially contrary to the Supreme Court's blanket protection of abortion rights of women while fetuses are non-viable. Their contentions center on questions regarding plaintiffs' standing to seek third party protection of abortion rights. Further consideration of that question strengthens my view that abortion providers have such standing, under Supreme Court opinions and Eighth Circuit rulings going back more than forty years. There have been very few serious challenges to standing, and no successful ones in Federal Courts. The most vigorous support for the State Defendants' contention seems to be in a dissenting opinion by Justice Thomas, which other dissenting justices did not join.[1]

---

[1] Three other dissenters limited themselves to contentions about res judicata and matters other than standing. <u>Whole Woman's Health v. Hellerstedt</u>, 136 S.Ct. 2292, 2330-2353 (2016). See the dissent on standing, Id. at 2321-23.

1

The law in this Circuit on provider standing in an abortion controversy was dealt with in a long footnote by Chief Judge Gibson in Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action, 558 F.2d 861, 865 n. 3 (1977) where it was acknowledged that, as of 1977:

> The extent to which a litigant may assert the constitutional claims of third parties not before the court has not been clearly delineated . . . [but] in the context of this case we believe that, as a prudential matter, Planned Parenthood should be allowed to assert the constitutional claims of its patients. There is an intimate relationship between Planned Parenthood and its patients and the right of a pregnant woman to secure an abortion is "inextricably bound up" with the ability of Planned Parenthood to provide one. Singleton v. Wulff, supra at 114-15. Also, the pregnant woman's ability to assert her own rights is beset with obstacles. She may be dissuaded from litigating because of her desire to protect her privacy; also, the imminence of mootness renders her claims less capable of assertion. Singleton v. Wulff, supra at 117. We agree with the District Court that Planned Parenthood should be permitted to assert the constitutional claims of its patients. (citing cases).

In this district, the Community Action ruling was relied on to support standing in Planned Parenthood of Kansas and Mid-Missouri, Inc. v. Drummond, 2007 WL 2811407, at * 3 (W.D.Mo.) for the same reasons that are applicable here.

The State Defendants continue to argue that the plurality opinion in Singleton is not authoritative in supporting standing because Justice Stevens concurred with some reservations. If that left standing somewhat unclear, 40 years ago, the intervening years have never seen a provider loss on that that ground. In briefing on other issues, the State Defendants rely on Bryant v. Woodall, 363 F.Supp.3d 611 (M.D.No.Car. 2019) (appeal filed June 26, 2019), as a standing controversy that supports doubt. But the District Court found standing, and the recommended rejection by the Magistrate Judge was on a theory that the abortion restriction was an old law, apparently unenforced - - while citing a large group of cases supporting provider standing to challenge recently enacted laws. 2007 WL 4055266, at * 7.

In contending that Singleton did not settle standing law in favor of abortion providers, the State Defendants fail to note that it was relied on for third party protection of constitutional rights by a seven-justice majority in Powers v. Ohio, 499 U.S. 400 (1991).

Comment on practical issues may be useful. As mentioned in plaintiffs' brief (Doc. 63) the Planned Parenthood provider and medical personnel like the co-plaintiff could face criminal charges and licensing issues if they disobeyed enacted legislation that remains in effect. Mo. Rev. Stat. §§ 188.375(3), 558.011(1)

2

(2). The suspension of the 20-week limitation allows abortions at a rate of about 100 per year, or two per week pending litigation. In my initial ruling I suggested that criminal proceedings were unlikely, given the position of the local prosecutor. But licensing issues are currently pending in State Court, and could be an aggravating issue. Plaintiffs consider it prudent to move cautiously regarding "Down Syndrome abortions" in the absence of judicial protection. (Doc. 60). One may suppose that if the statute is in effect pending appeal they would forego about two abortions per week that a requested stay would make legally dubious, and the practical harm to plaintiffs would thus be modest. The primary effect of a stay, as the State Defendants suggest (Doc. 64, p. 6) would be to bar a few abortions pending litigation. The State Defendants correctly treat this as a very significant result (almost comparable, they might say, to a capital punishment controversy). It gravely affects a few non-viable fetuses ("unborn children") but it also gravely affects the lives and family situation of a few pregnant women, who would be choosing abortions during the last available week or two before viability.

For more than forty years the Supreme Court has recognized a right under the Constitution for women to make the ultimate decision regarding abortion of non-viable fetuses. There is no such legal right in the Federal Court system for preserving the potential lives of non-viable fetuses. While the State Defendants may hope for a change in law, an "obedient judge" has an obligation to give weight to the current recognized legal right, rather than a legally rejected right (prior to viability). Recognizable legal harm from a stay entirely favors the plaintiffs.[2]

\* \* \* \* \* \* \*

Dealing briefly with some side-issues, the State Defendants contend they can overturn more than forty years of standing law, favoring abortion providers, by newly argued theories. That may be conceivable, at the Supreme Court level, if focus of the Court turns to the writing of Justice Thomas in Hellerstedt. But the

---

[2] I do not suggest that judges callously disregard the claims of the unborn. A balancing of rights occurred in the Supreme Court in adopting the trimester system and then the viability standard. Opponents of current abortion jurisprudence would leave balancing to the States. No one, however, suggests that the lower federal courts should be given this responsibility.

3

lower courts need to await such a change in law, and in this Circuit Community Action would continue to be applied against the contentions of the State Defendants.

Whether Section 1983 gives an independent claim to abortion providers is being questioned elsewhere, but Judge Sutton wrote it makes no difference, because abortion providers can still offer protection to prospective patients - - otherwise there would be no reason for the "rigamarole" going beyond the standing of providers on their own.  (Doc. 51, p. 2).

The State Defendants continue to place emphasis on Kowalski v. Tesmer, 543 U.S. 125 (2004), despite that case involving the legal profession and clients rather than abortion cases and analogous areas of the law, and Kowalski's acknowledgment that the Court has been "quite forgiving" in cases, like the abortion context, where lack of third party representation "would result indirectly in the violation of a third parties' rights." Id. at 130.

A new argument in the defendants' Reply Brief (Doc. 64, p. 4) is that plaintiffs have an obligation to "identify" future patients "to have standing." They cite Summers v. Earth Island Institute, 555 U.S. 488 (2009) for this proposition. That case rejected an environmental organization's challenge to procedural regulations after the original controversy over a small sale of land had become moot. The Court majority held the organization to development of a concrete dispute involving members. There has never been an obligation in abortion litigation as a condition of standing to somehow forecast that identifiable women would become future patients. Hellerstedt, a case more recently decided than Summers, demonstrates the factual distinction.[3]

The State Defendants also repeatedly find comfort in the "partial birth abortion" case, Gonzalez v. Carhart, 550 U.S. 124, 167 (2007), where Justice Kennedy wrote that "as-applied challenges" might be made where there were special physical conditions. Justice Kennedy, who joined in and presumably assigned Hellerstedt to Justice Breyer, clearly did not intend to bar abortion providers from representing prospective patients, where, as here, there is commonality of interest and no suggestion of specialized problems deserving attention on a woman-by-woman basis. Such a result would defeat abortion rights in

---

[3] It may be worth stating again that this case is simpler and easier to decide than Hellerstedt and its progeny because it is a prohibition case, not a regulation case, and there is no occasion to struggle with "undue burdens" and like questions.

almost all cases, an objective that is foreign to Gonzalez. At oral argument when it was suggested that only one in thirty women seeking abortions could be served if deprived of provider support, counsel seemed content with such a result. Doc. 52 p. 35-36. Unless the objective is simply to stop abortions, that would seem clearly to be a miscarriage of justice. Nothing in Gonzalez supports such an outcome.

For the reasons stated, the motion for partial stay (Doc. 54) is hereby DENIED.

    /s/ Howard F. Sachs
Howard F. Sachs
United States District Judge

September 18, 2019
Kansas City, Missouri